[No. 7,188.—Department Two.]
June 29, 1882.

JOHN H. REDINGTON ET AL. *v.* MATTHEW NUNAN.

REPLEVIN—SALE OF PERSONAL PROPERTY—FRAUD AS TO CREDITORS—CHANGE OF POSSESSION.—In an action to recover the possession of personal property—in which the defendant justified as Sheriff, under an attachment against one C., alleged in the answer to be owner—it appeared from the evidence that the property (consisting of the stock of a drug store) was purchased by the plaintiffs' vendor from the assignee in bankruptcy of C., and that C., who was then in possession, was allowed to remain in possession pending negotiations for a purchase by him; that subsequently the plaintiffs made a written agreement to sell the property to C. upon certain terms, and that, upon the failure of C. to comply with the terms

of the contract, the plaintiffs took possession some time prior to the levy of the attachment. The findings and judgment were for the plaintiffs.

*Held:* At the time of the transfer it was the assignee who was in possession and had control of the property, and there is no evidence which tends to prove that he did not immediately deliver it to the purchaser, or that the sale was not followed by an actual and continued change of possession. Therefore the transfer can not be conclusively presumed to be fraudulent as against the creditors of the bankrupt.

ID.—ID.—ID.—SUFFICIENCY OF EVIDENCE—FINDING.—Whether the property at the time of the seizure of it was the property of the plaintiff, is a question for the Court, sitting in place of a jury, to determine; the evidence being conflicting, the finding upon that point can not be disturbed.

ID.—DAMAGES—CONVERSION.—The action being for the recovery of possession of personal property, and not for its conversion, it was error for the Court to include in the judgment the money expended by the plaintiff in the pursuit of the property.

APPEAL from a judgment for the plaintiffs in the Twelfth District Court of the City and County of San Francisco— DAINGERFIELD, J.—and from an order denying a new trial in the Superior Court of the same City and County by the same Judge.

The complaint was as follows:

" The plaintiffs above named complain of Mathew Nunan, the defendant, and for cause of action allege: That at, and during all of the times hereinafter mentioned, said plaintiffs were and now are, copartners in trade doing business in the City and County of San Francisco, under the firm name of Redington & Co.

"That heretofore, to wit: On the ninth day of August, A. D. 1877, at the City and County of San Francisco, said plaintiffs were the owners of, all and singular, the goods, wares, merchandise, fixtures and personal property then in the Marine Drug Store, situated at the easterly corner of Market and Steuart streets, in said city and county, and particularly enumerated and set forth in the schedule attached hereto and marked 'Exhibit A,' and made a part of this complaint, of the value of four thousand dollars.

"That said defendant, on the ninth day of August, A. D. 1877, at said city and county, without plaintiffs' consent, and wrongfully took said goods, wares, merchandise, fixtures, and personal property from the possession of plaintiffs.

"That before the commencement of this action, to wit: On the tenth day of August, A. D. 1877, plaintiffs demanded of the defendant possession of said goods, wares, merchandise, fixtures, and personal property.

"And plaintiffs further aver, that, in pursuit of the said property, plaintiffs have been compelled to expend much time and money; that they employed counsel immediately upon the taking of said property by defendant, and have advised with said counsel from said taking until the present time; that they also employed said counsel in the bringing and prosecution of this suit; and that they have paid to their said counsel for their services in that behalf the sum of two hundred and fifty dollars in United States gold coin, which was a reasonable compensation therefor.

" That a fair compensation for the time and money properly expended by plaintiffs in the pursuit of said property is the sum of one thousand dollars.

" That said defendant still unlawfully withholds and detains said goods, wares, merchandise, fixtures, and personal property from the possession of plaintiff, to their damage in the sum of one thousand dollars.

" Wherefore, plaintiffs demand judgment against the defendant.

" 1. For the recovery of the possession of said goods and chattels, or for the sum of four thousand dollars, the value thereof, in case a delivery can not be had.

" 2. For one thousand dollars, damages, and for costs of suit.

"COWLES & DROWN,

"Attorneys for Plaintiffs."

The defendant justified as Sheriff under an attachment against one Curtis, whose property the answer alleged the property in question to be.  The plaintiff derived title from the assignee of Curtis in bankruptcy.  Curtis remained in possession after the purchase as agent of the plaintiffs until January 25, 1871 ; at which time the parties entered into a contract, the material parts of which are as follows : Memorandum of agreement  *  *  *  this twenty-fifth day of January, A. D. 1877, between the firm doing business at said city and county under the name and style of Redington &

Co., party of the first part, and James Curtis, of said city and county and State, party of the second part.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

Whereas, said party of the second part desires to purchase, from said party of the first part, the said fixtures, furniture, stock in trade, appliances, appurtenances, goods, wares and merchandise, and personal property, upon the terms and conditions hereinafter set forth.

Now, this agreement witnesseth, that the said party of the first part, in consideration of the covenants, undertakings and agreements hereinafter contained, on the part of said party of the second part to be kept and performed, has agreed, and does by these presents agree, to and with said party of the second part, to sell, assign, transfer and convey to said party of the second part, all  &ast;  &ast;  &ast;   (The property in question.)

That the said party of the second part may, upon the execution hereof, enter into the occupancy of said drug store and take possession of the property aforesaid; and thereafter and until default made hereunder and the surrender to or the recovery by said party of the first part of the possession, use, and occupancy of said store and property, may hold and use the same, and have and take to himself the income and profit of the business of said store.

That until the full and complete performance by said party of the second part of the conditions herein contained, on his part to be performed and kept; said property is not, neither is any part thereof, to be removed from said premises or transferred to any other place;  &ast;  &ast;  &ast;   the said party of the first part shall also have the right and privilege at any time, or for all the time prior to the full performance of this agreement by said party of the second part, to be represented at said store and in the business thereof by a clerk, who shall be made conversant with the management of said property and the conduct of said business, and whose wages or salary shall be borne and paid by said party of the second part.

That said party of the second part shall, from and after the execution hereof, pay the monthly rental of the premises occupied by said store;  &ast;  &ast;  &ast;   that until the complete performance by said party of the second part of this agree-

ment, said party of the first part and its duly authorized agents, attorneys, and servants shall at any and all times have access to, and the right to inspect any books, accounts, papers, or vouchers pertaining to said property, or to said store, or the business thereof.

That said party of the second part will pay to said party of the first part for said property the sum of nine thousand six hundred and ninety-three dollars and twenty-one cents in gold coin of the United States, in manner following:

(Here follows the terms of payment:)

That said party of the second part will also pay to said party of the first part, on the first day of each and every month during the running of this agreement, all sums due from him for purchases made from said party of the first part during the antecedent month.

That when said sum of nine thousand six hundred and ninety-three dollars and twenty-one cents in gold coin, with the interest thereon as above provided, shall be fully paid, and all the covenants, conditions, and agreements hereof shall have been fully performed by said party of the second part, said party of the first part will execute, to said party of the second part, a bill of sale of said drug store and of the said property hereby agreed to be sold, and deliver and transfer to said party of the second part the absolute possession, control and ownership of the same.

That until the full payment of the said sum, with the said interest thereon, and the execution of said bill of sale, and the complete performance, by said party of the second part, of the covenants and agreements aforesaid, the said drug store and all and singular the property aforesaid shall be and continue, solely and entirely, the property of said party of the first part.  *  *  *   And the said party of the second part, in consideration of the premises, hereby agrees to purchase said property so agreed to be sold by said party of the first part as aforesaid, and to pay therefor the said sum of nine thousand six hundred and ninety-three dollars and twenty-one cents, in gold coin, in the manner and with the interest hereinbefore specified.  *  *  *   It is mutually agreed, that time is of the essence of this agreement.  *  *  *

*H. J. Tilden,* for Appellant.

The Court erred in allowing three hundred dollars for expenses in pursuing the property; there is no evidence of any money having been expended in pursuit of the property, and if there had been, it could not be recovered in a replevin suit. (*Kelly* v. *McKibben,* 54 Cal. 192; Civil Code, Section 3336.)

The indebtedness of Curtis to Ballard was created in January and September, 1876, and the plaintiff's testimony shows, without any conflict, that Curtis continued to carry on the store in his own name, buying goods of Redington & Co. and other persons, and selling them to the public—in fact, that he dealt with the property as his own right, along after the bankruptcy proceedings in 1875 the same as before, up to the agreement of January 25, 1877, and thereafter until June or July, 1877, and even after that and until the attachment. From which it seems to me the claim of ownership of Redington & Co. must be conclusively presumed to be fraudulent and void as against the creditors of Curtis while he remained in possession. (Civil Code, Section 3440; *Watson* v. *Rodgers,* 53 Cal. 401; *Woods* v. *Bugbey,* 29 id. 466; *Hesthal* v. *Myles,* 53 id. 624; *Edwards* v. *Sonoma Valley Bank,* 8 P. C. L. J. 705.)

The Judge who tried the case below seemed to think because the property was purchased at the assignees' sale, the rule above does not apply, but the Civil Code makes no exception, and I can find no decisions where it has been held, that if a purchaser at such sale, or a sale on execution, leaves the property in possession of the debtor and allows him to deal with it as his own, the same as before (as shown by the facts in this case), the presumption of fraud does not apply as to the vendors or creditors of such debtor, but on the contrary, the decisions are that the presumption of fraud does apply. (*Betz* v. *Conner,* 7 Daly, 550; *Fonda* v. *Gross,* 15 Wend. 628; *Gardenier* v. *Tubbs,* 21 id. 169; 4 Wait's Practice, 74; *Stimson* v. *Wrigley,* 86 N. Y. 336.)

The authorities, I believe, are uniform, that when it is agreed that a party shall take possession of property, such as merchandise, in a store, and buy and sell the goods in the ordinary manner, that the transaction will be decreed to be

fraudulent and void as to the creditors and purchasers. (*Edgell* v. *Hart*, 9 N. Y. 213; *Hostler* v. *Hays*, 3 Cal. 303; Wells on Replevin, Sec. 329; *Devlin* v. *O'Neill*, 6 Daly, 305.)

*A. N. Drown*, for Respondents.

Whatever in the prayer relates to a return of the property was made surplusage by the answer, or will be regarded as surplusage, for the purpose of upholding the judgment. (Code Civ. Pro. § 580; Pomeroy's Rem. & Rem. Rights. § 580: *Emery* v. *Pease*, 20 N. Y. 64; *Rollins* v. *Forbes*, 10 Cal. 299: *Stringer* v. *Davis*, 35 id. 29; Bliss on Code Pleading, §§ 161, 167, 437.) Such being the case, we are clearly within the purview of Section 3336 of the Civil Code as amended January 22, 1878. (*Tulley* v. *Tranor*, 53 Cal. 274; *Dent* v. *Holbrook*, 54 id. 145.) It is not pretended that Curtis had paid for this property, or had at any time after January 25, 1877, anything more than a conditional right of purchase. Redington & Co. expressly provided that until the full payment of the purchase money and the execution of the bill of sale and the complete performance * * * of the covenants and agreements aforesaid, the said drug-store, and all and singular the property aforesaid, shall be and continue solely and entirely the property of said party of the first part. (*Buckmaster* v. *Smith*, 22 Vt. 203; *Woodbury* v. *Long*, 8 Pick. 542; S. C., 19 Am. Dec. 345; *McFarland* v. *Farmer*, 42 N. H. 389; Drake on Attachment (5th ed.), § 246; *Putnam* v. *Lamphier*, 36 Cal. 151; *Kohler* v. *Hayes*, 41 id. 455; *Truman* v. *Hardin*, 5 Saw. C. C. 117, 118.)

Indeed, the transaction did not even amount to a conditional sale. There are no present words of sale or transfer in the paper; it is merely an executory contract, a conditional agreement to sell, enforceable by Curtis only upon strict compliance with the conditions as to time, payments, etc. (*Sumner* v. *McFarlan*, 15 Kan. 600; *Enlow* v. *Klein*, 79 Pa. St. 490.) The assignment related back to the commencement of the proceedings, and by operation of law, vested the title to all property, real and personal, in the assignee. (U. S. Rev. Stat. 5044; Bump's Bankruptcy, 10 ed. 485.) The assignee succeeds to the rights of all the creditors, as well as of the bankrupt. (Bump on Bank. 503.) For these reasons, if for no others,

the statute of frauds could have no application to the transfer to the assignee.    Moreover, transfers are of two kinds: (1) an act of the parties, (2) or of the law (Civ. Code, § 1039). The transfer contemplated by Section 3440 is of the first kind; the transfer by reason of the bankruptcy is of the second. (*Mays* v. *Manuf. Nat. Bank*, 64 Penn. St. 77; *In re Lake*, 3 Biss. 204; S. C., 6 Bank Reg. 543; *In re Gregg*, 3 Bank Reg. 535, 536.)

The COURT:

The transfer of the property sued for in this action, if made at all, was made by the assignee of the estate of Curtis in bankruptcy, and not by Curtis, so that at the time of the transfer it was the assignee who was in possession and had control of said property, and there is no evidence which tends to prove that he did not immediately deliver it to the purchaser, or that said sale was not followed by an actual and continued change of possession.   Therefore, the transfer can not be conclusively presumed to be fraudulent, as against creditors of the bankrupt.   Whether the property, at the time of the seizure of it by the defendant, was the property of the plaintiff, was a question for the jury, or for the Court sitting in place of the jury, to determine; and as we think that the evidence is conflicting, we can not disturb the finding upon that point.   It was an inference of fact, and not a presumption of law, that had to be drawn from the evidence.

But we think that the Court erred in including in the judgment the sum of three hundred dollars for money expended by the plaintiff in the pursuit of said property.   The action is for the recovery of the possession of personal property, and not for the conversion of it.   This distinction was pointed out in *Kelly* v. *McKibben*, 54 Cal. 192.

The judgment must, therefore, be modified by deducting from it said sum of three hundred dollars, and with that modification it is affirmed.