PACIFIC POSTAL TEL. CABLE CO. v. BANK OF PALO ALTO.

(Circuit Court of Appeals, Ninth Circuit.    May 6, 1901.)

No. 653.

1. PRINCIPAL AND AGENT—TELEGRAPH COMPANIES—LIABILITY FOR TORTIOUS ACTS OF OPERATOR.

A telegraph company is liable to a bank for the loss occasioned to the latter by its payment of money, without negligence, on a message purporting to have been sent by another bank, but which was in fact concocted and forged by an operator employed by the telegraph company, whose duty it was to send messages, and who sent such message in the usual manner over the company's line, and through its regular agents.    In such case the act of the operator in sending the false message, although criminal, and unauthorized by the company, was within the apparent scope of his employment, and if the message had been

genuine would have been within his actual authority, and it was only by reason of such authority that he was enabled to consummate the fraud. His act was also a violation of a duty which the company owed to the public and third persons to transmit only genuine messages.

2. DAMAGES—ATTORNEY'S FEES—CALIFORNIA STATUTE.

Civ. Code Cal. § 3336, providing that the damages recoverable for wrongful conversion shall include "a fair compensation for the time and money properly expended in pursuit of the property," does not apply to an action against a telegraph company to recover the amount of a loss sustained through the fraudulent act of its agent, by which plaintiff was induced to pay money to a third person, and does not authorize the recovery in such action, as an element of damages, of attorney's fees expended by the plaintiff in recovering a portion of the money from the person to whom it was paid.

In Error to the Circuit Court of the United States for the Northern District of California.

Upon the trial of this case the court found, among other things: That on December 27, 1898, and for some time prior thereto, one Lee B. Minkler was in the employ of the defendant, as an operator, at its office in the city and county of San Francisco, and as such it was the duty and within the scope of his employment to send messages from the office of the company at San Francisco. That said company was known to the public and to the plaintiff to be operating a line of telegraph wires for the general transmission of messages between the city of Los Angeles, state of California, and the city and county of San Francisco, and between the last-named place and the town of Palo Alto. That prior to said date, and while the said Minkler was as aforesaid in the employ of defendant, the said Minkler made and entered into a criminal conspiracy with one Byron Hall Barclay for the purpose of cheating and defrauding the plaintiff by causing the transmission of the false telegraphic order hereinafter mentioned, and for that purpose, and in pursuance thereof, and to that end, the said Minkler did on said date make criminal use of the instruments and wires of the defendant, and caused to be transmitted over the same, and to be delivered to plaintiff, the telegraphic message hereinafter referred to; that in transmitting the said false message the said Minkler acted in criminal violation of his duties as such operator, and the defendant had no notice, knowledge, or information of the conspiracy aforesaid, or of the carrying out of the same, or of the intention of said Minkler to perpetrate said, or any, fraud upon the plaintiff, except as the same was known to said Minkler. That all of said Minkler's conduct, acts, and doings aforesaid were wholly willful, criminal, and in absolute violation of his duties as an operator or employé of the defendant, except that, if the said telegram had been genuine, it would have been within the scope of said Minkler's employment to transmit the same in the manner in which he did. That on said day said Minkler transmitted from San Francisco to plaintiff, at Palo Alto, a false telegraphic message in the words and figures, to wit: "Sent by M. Received by Ma. 15, paid. Dated, Los Angeles, 27. Received at Palo Alto Dec. 27, 1898. To Bank of Palo Alto: Please pay Harry L. Cator eight hundred and forty dollars. Waive identification. We remit to-day. Farmers' and Merchants' Bank." That said message was sent by said Minkler, while he was on duty as an operator of defendant, upon an instrument belonging to and in the office of defendant in San Francisco, over one of defendant's wires, connecting its office in San Francisco with its office in Palo Alto, was received by an operator of defendant in defendant's office in the last-named town upon one of defendant's instruments in the last-named office, and was transcribed and delivered to plaintiff by defendant's operator at Palo Alto. That, for the purpose of inducing plaintiff to part with its money, Minkler caused one Byron Hall Barclay to present himself to plaintiff at its place of business at Palo Alto, and represent to plaintiff that he was the party named as Harry L. Cator, and was entitled to receive the payment of said sum of money, and the said Barclay so represented to the plaintiff. That said representations were

false, and were known by Minkler and Barclay to be false. That, believing said message to be true and genuine, and acting upon the same, the plaintiff paid to Barclay on the 27th day of December, 1898, the sum of $840 thereon. That plaintiff thereafter, on the 28th day of December, 1898, first learned that said representations were false, "and thereupon was compelled to and did immediately employ counsel to advise and direct plaintiff in the pursuit and recovery of, and to pursue and recover, on behalf of plaintiff, the said property fraudulently converted as aforesaid by defendant. That plaintiff properly expended in the pursuit of said property as aforesaid, and has paid for counsel fees, the sum of two hundred and fifty dollars, seven and $59/100$ dollars for telegraph and telephone messages, eighteen and $5/100$ dollars for traveling expenses, and two and $70/100$ dollars for copying. That all of said sums are reasonable, and were necessarily and properly expended by plaintiff in pursuit of said property. * * * That, by reason of the premises, plaintiff has been and is damaged in the sum of eight hundred and forty dollars, United States gold coin, with legal interest thereon from December 27, 1898, and also, by way of special damages, in said sum of two hundred and seventy-eight and $34/100$ dollars, properly expended in pursuit of said property as aforesaid,"—and rendered judgment for said amount. 103 Fed. 841.

Lloyd & Wood, for plaintiff in error.

Joseph Hutchinson, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the facts, delivered the opinion of the court.

1. The vital question involved in this case is whether or not a telegraph company can be held responsible in damages for the criminal use of its wires and instruments by a subordinate employé, to wit, a telegraph operator, as distinguished from the manager, agent, or superintendent of the business, acting in pursuance of a criminal conspiracy with an outside party, and in criminal violation of the duties of his position and employment. This question and the legal principles relating thereto are to some extent unusual, and are exceedingly interesting and important. The general rule as to the liability of a corporation for the acts of its agents, servants, or employés acting within the scope of their authority, and in the performance of duties regularly intrusted to them, is not called in question. In a certain sense it may be said that we are called upon to deal solely with the exceptions to the general rule. In another sense it may be said that the facts present the question whether telegraph corporations and companies stand upon a different plane from that of other corporations and companies engaged in other kinds of business. In any view which may be taken, grave responsibilities are involved. The decision in this case must be rendered with reference to the general principles of the law relating, by analogy or otherwise, to the particular facts and circumstances of this case, in order to reach the ends of justice and right between the parties. If there are no decided cases which march up to the standard of authority, binding upon this court, then sound reason, which is the soul of the law, must assert the rule which should govern and control cases of this character. The business of telegraph companies is in some respects different in its relations with the public from that of other corpora-

tions. It is important because of its instantaneous means of communication, and because it is intended to influence the action of the party to whom the telegram is directed. Such party is, in most cases, compelled to act upon the telegram which he receives, and has a right to trust to its correctness, and rely upon the representation made upon its face that the sender, whose name is signed to the message, has sent that particular telegram to the party named in the message. In these particulars, at least, it may be said that a telegraph company, in the eye of the law, stands in a position of its own.

Our attention has been called to numerous authorities where certain principles of law have been announced which, if not controlling upon the facts of this case, have more or less bearing upon the real issue herein, and are worthy of careful consideration. They have all been examined with care. Many of them will not be cited, and but few need be reviewed. There are but three telegraph cases which are specially relied upon, namely, Bank of California v. W. U. Tel. Co., 52 Cal. 280; McCord v. Same, 39 Minn. 181, 39 N. W. 315, 1 L. R. A. 143, 12 Am. St. Rep. 637; Elwood v. Same, 45 N. Y. 549. It is proper to state that each of these cases is identical with the case in hand, in this: that the telegram was sent without authority, was false and forged; that the party sending it committed a criminal act; that the telegram upon its face appeared to be genuine and true, and was sent and received in the usual manner, and was calculated and intended to deceive and defraud the bank or party to whom it was directed. In the case of Bank of California v. W. U. Tel. Co., supra, the only distinguishable feature in the facts from this case is that the telegram was not sent by an employé of the telegraph company. In that case one Washburn was the sole agent of the telegraph company at Colusa, Cal., for the receipt and transmission of dispatches over its telegraph wires. It also appears that he was at that time the agent for Wells, Fargo & Co.'s Express, and acted as the agent of various insurance companies. In conducting his business he had in his employ a young man who went by the name of Crowell, who was a telegraph operator, and, in the line of his duties as an employé of Washburn, had free access to the office of the telegraph company, and to the apparatus therein for sending dispatches, and was authorized by Washburn to send and receive dispatches when he (Washburn) was absent. Availing himself of this authority, Crowell, during Washburn's absence, wrote out and sent over the wires the following false and forged telegram: "Colusa, Jan. 19, 1875. To the Bank of California, San Francisco: Pay Chas. H. Crowley twelve hundred dollars, gold. [Signed] W. P. Harrington, Cashier." Harrington was at that time the cashier of the Colusa County Bank, and well known to be such by the Bank of California. Crowell sent a telegram to himself at San Francisco, and then went to San Francisco, and procured the services of a friend who identified him, and drew the money from the bank and disappeared. The court held the telegraph company liable. It is true, as claimed by plaintiff in error, that the case virtually turned upon the ground that Washburn, the agent, was negligent in permitting Crowell, who had no authority

from the telegraph company, to have access to the wires. In the course of the opinion the court, among other things, said:

"If the fraudulent acts committed by Crowell had been done by Washburn, the defendant would have been liable to an action on the case. * * * If an agent of a telegraph company, whose duty it is to send genuine messages, shall willfully and fraudulently send a dispatch in the name of another, this wrong act is as much done 'in the course of his employment' as if he had negligently sent a forged message. To this extent the person receiving the dispatch may depend on the guaranty of the company that their agent is faithful and honest; and he is equally damnified. whether the fraud is committed by the agent directly, or is successfully consummated by another by reason of the negligence of the agent. The agent is authorized to transmit messages, and the transmission of a false message, whether contrived by himself or contrived by another, and negligently sent by him, is within the course of his employment. * * * Washburn was engaged in his master's business, not his own. It was part of his duty to keep Crowell from using the wires. He failed to discharge this duty, and the principal is equally responsible whether the placing of Crowell in charge was a 'wrongful act committed as a part of the transaction of the business,' or was mere negligence."

In McCord v. Telegraph Co., supra, the only fact which distinguishes the case from this is that the false telegram was sent by the local agent of the telegraph company, instead of a mere employé of the company. The court held that a telegraph company is liable for the fraud and misfeasance of an agent intrusted with the duty of transmitting messages over its line, in sending a false and fraudulent message prepared by himself to a party who received the same in the usual course of business, and in good faith acts thereon to his damage; that where the local agent of a telegraph company, who was also agent of an express company at the same place, sent a forged dispatch to a merchant in a neighboring city, requesting him to forward money to his correspondent at the former place, to use in buying grain, and the same was duly received, and the money in good faith forwarded by express in response to the telegram, but was intercepted and converted to his own use by the agent, the transmission of the forged dispatch was the proximate cause of the loss; and that the corporation was liable, though an action might also have been maintained against the express company. In the course of the opinion the court said:

"The principal contention of defendant is, however, that the corporation is not liable for the fraudulent and tortious act of the agent in sending the message, and that the maxim respondeat superior does not apply in such a case, because the agent, in sending the dispatch, was not acting for his master, but for himself and about his own business, and was in fact the sender, and to be treated as having transcended his authority, and as acting outside of and not in the course of his employment, nor in furtherance of his master's business. But the rule which fastens a liability upon the master to third persons for the wrongful and unauthorized act of his servant is not confined solely to that class of cases where the acts complained of are done in the course of the employment in furtherance of the master's business or interest. * * * The defendant selected its agent, placed him in charge of its business at the station in question, and authorized him to send messages over its line. Persons receiving dispatches in the usual course of business, when there is nothing to excite suspicion, are entitled to rely upon the presumption that the agents intrusted with the performance of the business of the company have faithfully and honestly discharged the duty owed by it to its patrons, and that they would not knowingly send a

false or forged message; and it would ordinarily be an unreasonable and impracticable rule to require the receiver of a dispatch to investigate the question of the integrity and fidelity of the defendant's agents in the performance of their duties before acting. Whether the agent is unfaithful to his trust, or violates his duty to or disobeys the instructions of the company, its patrons may have no means of knowing. If the corporation fails in the performance of its duty through the neglect or fraud of the agent whom it had delegated to perform it, the master is responsible. It was the business of the agent to send dispatches of a similar character, and such acts were within the scope of his employment, and the plaintiff could not know the circumstances that made the particular acts wrongful and unauthorized. As to him, therefore, it must be deemed the act of the corporation. Bank of California v. W. U. Tel. Co., 52 Cal. 280; Booth v. Bank, 50 N. Y. 400."

In Elwood v. Telegraph Co., supra, the only distinguishable facts from the present case were that the message was delivered to the telegraph operator by a third party, and that the question as to whether the act by which the plaintiff was injured was a willful wrong of the defendant's operator was not properly before the court for decision. The court held that it was gross negligence in the operator at a telegraph station to send over the wires a message in the name of, and purporting to come from a cashier of, a bank, and to be dated at another station, at the request of a party known to the operator not to be such cashier, and presenting no evidence of authority to use his name, which message, addressed to a banking house, held out such party as entitled to credit for a large amount; and this negligence occurs so within the scope of the employment of such operator as to make the telegraph company liable to the person to whom such telegram was addressed for the damages occasioned by such negligence. The court, in the course of its opinion, said:

"That the sending of such a message in the name of the cashier of a bank, at the request of the party who was thereby held out as entitled to credit for a large amount, without any evidence of his authority to use the name of the cashier,—it being dated at Erie, though known to have originated at Titusville,—was an act of gross negligence, is too clear to admit of argument. The act was done in the direct course of the employment of the agent. The agent was placed in the office, and in the control of the instruments, to use them in transmitting messages for a compensation. If the agent performed that duty in a negligent manner, whereby the plaintiff was injured, the principal is clearly liable. Transactions of the most important character are daily carried on by means of telegraphic communication, and the confidence which the public is invited to and does repose in the care with which the proprietors of these lines conduct the business is a source of large remuneration to such proprietors. They incur a corresponding degree of responsibility, and must be held to the exercise of such care and caution as it is in their power to employ, in order to avoid being made the instrument of deception and fraud."

Notwithstanding the slight difference in the facts in those cases from the one in hand, it is difficult, under the rules announced therein as to the liability of a telegraph company, to distinguish them from the present case in principle. In the action brought by the Bank of California, the telegram was not sent by the agent of the telegraph company, nor by an operator employed by that company. It is not as strong a case against the company as is presented by the facts in this case. Can it consistently be claimed that if the telegraph company in that case had employed Crowell as an operator, or authorized its agent, Washburn, to employ him, that it would thereby have

been released from all liability because Crowell was a mere employé, —a telegraph operator,—not an agent? We think not. There are certain lines of business transacted by the telegraph company,—as, for instance, the purchase of goods and materials for use in its office,—where the company would be bound by acts of its agent; but the seller of the goods could not hold the company liable if the supplies were bought by a mere employé, without showing that he was authorized to make such purchases. But the principle which applies to such transactions has no relation to the business of the company in sending dispatches over its wires. What is an operator employed for? What are his duties? But one answer can be given, viz. to send and receive messages in the regular order and manner of the business. Of course, it is his duty to send true messages, not false ones or forged ones. The same duty rests upon the agent. If either the agent or the operator should manufacture telegrams and send them over the company's lines, of the character of the telegram sent in the present case, they would be acting outside of the scope of their authority. But both would be acting in the direct course of their employment, viz. transmitting messages over the company's lines. The company is held liable because it has placed its agent and operator in charge of its appliances and instruments for the transmission of dispatches over its lines, and authorized them to use the same. In the case of Elwood v. Telegraph Co., it was a mere operator, not the regular agent of the company, that sent the fraudulent dispatch, for which the company was held liable. The court treated the operator as an agent of the company for the purpose of sending telegrams.

It is contended by counsel for the plaintiff in error that when Minkler, the operator in its employ for the purpose of transmitting messages, criminally used its appliances, he was not acting as its servant; "that the relation of master and servant, as to that particular act, had ceased to exist, and it is immaterial that he used the instrument and wires of plaintiff in error in order to accomplish his criminal purpose." In support of this contention counsel confidently rely upon the principles announced in Stephenson v. Southern Pac. Co., 93 Cal. 558, 561, 29 Pac. 234, 15 L. R. A. 475, which it is claimed are directly in point, and conclusive of the question involved herein, in favor of the telegraph company. That action was brought and prosecuted against the railroad corporation to recover damages for an injury alleged to have been caused by the unnecessary and wanton act of the engineer of a yard engine, who was an employé of the railroad corporation, in blowing the whistle and moving his engine in such a manner as to frighten the passengers in a horse street car, and to cause one of them (the plaintiff) to jump out, whereby she received an injury. The court held, upon the particular facts disclosed by the record in that case, that the plaintiff could not recover damages against the railroad company for the wrongful and wanton acts of its engineer, because he "was not acting within the scope of his employment." If an agent or employé, not in the line of his duty, or within the scope of his agency or employment, does an act wholly outside of the general business of the corporation, and in no manner

having any connection therewith, the corporation cannot be held liable for his acts. But that case does not decide that a corporation cannot in any case, upon any state of facts, be held liable for the wanton and malicious acts of agents or employés while engaged in the line of duty they were employed to perform. "A principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business." 2 Deer, Ann. Code, § 2338; Story, Ag. § 452; Reynolds v. Witte, 13 S. C. 5, 16; Brooke v. Railroad Co., 108 Pa. 530, 545, 546, 1 Atl. 206.

In Railway Co. v. Prentice, 147 U. S. 101, 109, 13 Sup. Ct. 261, 37 L. Ed. 97, the court said:

"A corporation is doubtless liable, like an individual, to make compensation for any tort committed by an agent in the course of his employment, although the act is done wantonly and recklessly, or against the express orders of the principal. Railroad Co. v. Derby, 14 How. 468, 14 L. Ed. 502; Steamboat Co. v. Brockett, 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049; Howe v. Newmarch, 12 Allen, 49; Ramsden v. Railroad Co., 104 Mass. 117."

See, also, Trabing v. Improvement Co., 121 Cal. 137, 140, 53 Pac. 644, and authorities there cited.

Numerous other cases might be cited where corporations transacting different kinds of business have been held liable for the wrongful, tortious, malicious, and illegal acts of their agents, servants, and employés, without reference to their grade or position. Especially is this true in all cases like the present, where the business with which the agent, servant, or employé is intrusted involves a duty owed by the corporation to the public or third persons. If the agent or servant, while so employed by the corporation, by his wrongful and malicious act occasions a violation of that duty, or an injury or loss to the person interested in its faithful performance by or on behalf of the corporation, the principal is held liable for the breach of it. This general principle is announced in all the telegraph cases heretofore cited. It seems to be deeply rooted in the groundwork of the law, and ought not to be frittered away by ingenious argument or splitting of hairs upon nicely-drawn distinctions of facts which do not create any substantial distinction in the principle of law involved. The contention that in the line of duty in the transmission of messages there is a distinction that ought to be drawn between the agent of the corporation and a mere operator is, when the duties of each in this respect are considered, to say the least, very subtle and refined. It stands substantially on the same plane as the argument that at the time an agent or operator conceives the idea to commit a wrongful act, and starts to carry out his purpose, he thereby immediately separates himself from the company's service. This is to refine the distinction sought to be made beyond the line of safety and of sound law. But it is argued by the plaintiff in error that this principle does not apply in cases of crimes committed by the agent or employé. Why not? It is broad, clear, and comprehensive, and, as before stated, it applies to all cases. As was said by Cooley in his work on Torts (2d Ed.) 629, "The test of the master's responsibility

is not the motive of the servant, but whether that which he did was something his employment contemplated, and something which, if he should do it lawfully, he might do in the employer's name." A crime was committed by the agent of the telegraph company in McCord v. Telegraph Co., supra. A crime was committed by the operator employed by the agent of the telegraph company in Bank of California v. W. U. Tel. Co. A crime was committed by a third person in the case of Elwood v. Same. In each of these cases the telegraph company was held responsible. In Dougherty v. Wells, Fargo & Co., 7 Nev. 368, 373, a crime was committed by an agent, for which the company was held responsible. In that case the agent of the express company had received from the plaintiff an old certificate of deposit for $1,000, with the request that it should be forwarded to San Francisco, and there exchanged for a new certificate of deposit from the office of the company in San Francisco. Instead of complying with these instructions, the agent collected the money on the old certificate and appropriated it to his own use. He embezzled it without the knowledge, consent, or authority of the express company. It was an act wholly without the scope of his agency. The contention of counsel for the express company was that it could not be held responsible for the crime committed by its agent; that the agent's acts were not within the scope of his agency. Of course, he was not authorized by the company to steal or embezzle the money or property of third persons doing business with the company. The court, however, held the company liable—

"Not upon the rule that the agent acted for the principal in that particular transaction, but because he is employed by the principal in that character of business, and is so held out as a person authorized and fully to be trusted therein. When the agent in such case does an act which is apparently within the general scope of his authority, although not so in fact, if the principal were not held liable for the act, a third person, who had reason to believe that the agent was reliable, and possessed authority in the particular matter from the general character of his employment, might suffer loss; hence the law holds the principal liable, upon the ground that he, rather than a third person equally innocent, should suffer."

In holding the telegraph company liable for the wrongful, tortious, and criminal acts of Minkler, we are not called upon to make any departure from the established principles of the law. No additional or independent reasoning is required to show that the rule as announced in the telegraph cases is sound and just. Its foundation is based on the principle, often applied by the courts in a great variety of cases, that, if one of two innocent persons must suffer loss by the act of a third, he who put it in the power of the third person to do such act should be compelled to sustain the loss occasioned by its commission.

2. The other question presented by the assignments of error relates to the measure of damages: Did the court err in allowing the bank $250, special damages for counsel fees which were expended by it in the pursuit of the property before the commencement of this action? The record shows that the fees expended by the bank resulted in securing from Barclay nearly the whole amount of money he had wrongfully received from the bank by means of the false and

fraudulent telegram sent by Minkler, and was a benefit, instead of a loss, to the telegraph company. Notwithstanding this fact, it is clear to our minds that the bank is not entitled to recover it, as special damages, unless it is authorized to do so by the provisions of section 3336 of the Civil Code of California, which reads as follows:

"The detriment caused by the wrongful conversion of personal property is presumed to be (1) the value of the property at the time of the conversion; * * * (2) a fair compensation for the time and money properly expended in pursuit of the property."

It is admitted that the question whether the damages may include counsel fees in an action of this character has never been definitely decided by the state court in its interpretation of section 3336. In so far as they have any bearing upon the question, the intimations are all adverse to the contention of the defendant in error. Kelly v. McKibben, 54 Cal. 192, 195; McDonald v. McConkey, 57 Cal. 325; Redington v. Nunan, 60 Cal. 632, 639; Greenbaum v. Martinez, 86 Cal. 459, 463, 25 Pac. 12; Murphy v. Mulgrew, 102 Cal. 547, 36 Pac. 857; Spooner v. Cady (Cal.) 44 Pac. 1018; Hays v. Windsor (Cal.) 62 Pac. 395. What is the character of this action? Should it be treated as an action to recover damages against the telegraph company for the wanton, willful, malicious, and criminal act and injury committed by its servant, or should it be treated as an ordinary action for the wrongful conversion of property? We are of opinion that the character of the action must be determined by the facts set forth in the complaint, not by the name that counsel may call it. The defendant in error was never in the possession of the money obtained by Barclay, to which the plaintiff in error was entitled. It did not take the money from the possession of the bank. It did not request the bank to employ counsel in the pursuit of the property. In the light of the facts set forth in the complaint, we are of opinion that this is an action to recover damages for the wrongful and illegal act committed by Minkler, the telegraph operator, in the employ of the telegraph company. The bank was injured to the extent of $840, and legal interest thereon up to the time of recovery, for which the telegraph company is held liable. The bank was not compelled to employ counsel or expend any money in the pursuit of Barclay to obtain the money illegally procured by him by means of the false telegram sent by Minkler, in order to enable it to recover the amount from the bank. The telegraph company's liability was complete when Barclay, alias Cator, obtained the money from the bank on the telegram. Whatever the bank thereafter expended in pursuing the man that obtained the money, and in getting from him the greater amount thereof, was the voluntary action of the bank, for which it is not entitled to recover from the telegraph company. The telegraph company did not convert the money to its own use. It was not claiming this property as its own. In our opinion, section 3336 is intended to apply to ordinary common-law or code actions for the wrongful conversion of property, pure and simple, and was never intended to apply to an action like the present, by whatever general name it may be called. It does not apply to an action of replevin. In Hays v. Windsor, supra, which was an action to recover the pos-

session of grain of which plaintiff alleged ownership and right of possession, the court, among other things, said:

"We do not think the prevailing party in a replevin action can recover attorney's fees as damages for the detention, or as damages for taking and withholding the property (Code Civ. Proc. § 667); nor are such fees to be included as part of the damages to be measured by section 3336 of the Civil Code."

The action taken by the bank in employing counsel to secure the arrest of the real criminals, and, if possible, to obtain the money from them, was evidently taken in good faith, and exhibited a commendable spirit in the interest of public justice. But our attention has not been directed to any principle of law that would hold the telegraph company liable therefor. The circuit court is therefore directed to modify its judgment herein by striking out therefrom the amount of $250 allowed for counsel fees in the pursuit of the property, and with this modification the judgment is affirmed.