SECURITY–FIRST NATIONAL BANK OF LOS ANGELES, as Executor of the Will of Benjamin Harrison Sheldon, Mae Sheldon, and Robert Hohly, Appellants and Cross-Appellees,

v.

Eva S. LUTZ, as Administratrix of the Estate of Walter A. Lutz, Deceased, Appellee and Cross-Appellant.

No. 18174.

United States Court of Appeals
Ninth Circuit.

Aug. 19, 1963.

Kirtland & Packard, Frederick P. Backer, and Abe Mutchnik, Los Angeles, Cal., for appellant Robert Hohly.

Gerald Bridges, Los Angeles, Cal., for appellant Mae Sheldon.

Lawler, Felix & Hall, and Robert Henigson, Los Angeles, Cal., for appellant Security-First Nat. Bank, as exr. of will of Ben H. Sheldon, Decd.

Joseph T. Enright, Norman Elliott, and Bill B. Betz, Los Angeles, Cal., for appellee.

Before BARNES and MERRILL, Circuit Judges, and ZIRPOLI, District Judge.

MERRILL, Circuit Judge.

This case is back before us, following hearing by the district court upon our remand to that court for determination of damages. The facts upon which liability was founded and the reasons for remand are set forth in our earlier opinion (297 F.2d 159). Following hearing before the district court upon our remand, judgment of that court was rendered in favor of appellee and against appellants Security-First National Bank of Los Angeles (as executor of the will of Ben H. Sheldon, deceased), Mae Sheldon (Sheldon's widow), and Robert Hohly (Sheldon's accountant). Appeals have been taken from those judgments. Since the earlier proceeding plaintiff Dr. Walter A. Lutz has died, and Eva S. Lutz, administratrix of his estate, has been substituted. To maintain continuity with our earlier opinion, however, we shall refer to Dr. Lutz as though he continued as appellee herein.

*Appeal of the Bank.*

Upon the former appeal the position of the bank was stated in our opinion as follows:

"The bank asserts that at the time of incorporation the partnership owed Sheldon for advances and for unpaid salary; that in lieu of taking cash payment from the partnership, Sheldon had compensated himself by taking additional stock in the corporation. Conceding that he was not entitled to settle the obligations owing him in this unilateral fashion and that the arrangement was thus subject to being set aside, still (the bank contends) if it is to be set aside, credit should be given him for the sums owing."

We agreed, and ruled:

"If Lutz, then, upon equitable principles is to be permitted to avoid the consequences of his consent to incorporation, equitable considera-tion must be given to the rights of Sheldon, restored to him in the eyes of equity by that very avoidance."

Upon remand of the judgment against the bank, then, the problem was to ascertain the extent of the claims which Sheldon could rightfully make against the partnership at the time the business was taken over by the corporation. Sheldon's claims, as asserted by the bank, were twofold: advances made and salary earned.

As to the advances, there is no dispute as to amount—the sum is $57,200. The district court, upon remand, found that this sum was a part of the capital contribution to the partnership which Sheldon was from the outset obligated to make.

This finding apparently is based upon remarks (made to Lutz prior to the execution of the partnership agreement) by Sheldon (as to what he proposed to put into the business), and by Mrs. Sheldon (as to what had already been put in) at a time when Lutz's partnership interest was tentatively fixed at 3 per cent. By the partnership agreement, the extent of Sheldon's capital contribution was specified. It did not include the $57,200 here in question. The record establishes the value of that contribution, as specified in the agreement, to be $81,655.97, based upon Sheldon's cost investment. That sum constituted 59.3 per cent of the total cash investment in the partnership for which, by the partnership agreement, Sheldon received a 60-per-cent interest. Lutz's interest was, by the agreement, increased from the 3 per cent originally contemplated to 9 per cent.

In our judgment the provisions of this agreement preclude any finding that the sum of $57,200 was paid in satisfaction of Sheldon's original obligations to the partnership. It did, then, remain an obligation of the partnership at the time the corporation took over, and under our prior ruling was a right of Sheldon (and a debt of Lutz to the extent of his 9-per-cent interest) which

must be taken into consideration in determining damages for conversion.

As to salary, the partnership agreement provided for the compensation of the general partners at "such reasonable compensation for services * * * as shall be agreed upon between said General Partners and a majority in interest of the Limited Partners." The record shows that no agreement was ever reached. The bank contends that under these circumstances Sheldon was entitled to salary in a reasonable amount. The district court has ruled that Sheldon had no rights in this respect.

■ We agree. Under California law interpreting § 18 of the Uniform Partnership Act (Cal.Corporations Code, § 15018(f)), where a partnership agreement reserves the matter of partner compensation for future determination, an agreement between partners fixing the amount of salary is necessary before any right, legal or equitable, to receive salary even in a reasonable amount can be said to exist. Vangel v. Vangel (1953), 116 Cal.App.2d 615, 254 P.2d 919.

Judgment against the bank, then, must be composed as follows:

$25,042.40 (value of shares and debentures converted), less $5,148, 9 per cent of $57,200, or a net judgment of $19,894.40, plus interest at the rate of 7 per cent per annum from May 8, 1956.

Judgment of the district court was in the sum of $31,566.25, with interest from December 10, 1959. It must be reduced accordingly.

*Appeal of Hohly.*

Judgment against Hohly, from which the former appeal was taken, was based upon liability for negligence and constructive fraud. It was in a sum equal to the judgment for conversion against the bank ($31,566.25), plus $15,000 exemplary damages. In our former opinion we upheld the district court in its determination of liability for the loss suffered by conversion, but found nothing in the record to support a judgment for exemplary damages. We ordered that portion of the judgment set aside, and the matter was remanded for the same considerations as applied to the judgment against the bank.

The district court has now found Hohly liable in the sum of $55,000. It appears from the findings that this increased sum is based upon two major components.

The first component is detriment (or out-of-pocket loss) to Lutz. This was not calculated, however, in the manner approved by the former appeal: in terms of the value of the converted securities as measured by their sale price. Rather it was calculated in terms of value ascertained by capitalizing the venture's projected profits.

Lutz here contends that the conversion deprived him of his rightful share of the partnership's future profits and that Hohly, because of his negligence, but for which the conversion might never have been accomplished, should be held responsible for this loss. The district court agreed with him.

A similar contention was made on the last appeal in connection with conversion damages to be assessed against the bank and was rejected by us. We there noted that the price paid for the corporation under recognized business practice must have been based in part upon a capitalization of future profits of the business, and that this factor must be assumed to be included in the value of the corporate stock which was converted.

■■ We adhere to that view. The future profits of a business are a factor in determining the value of that business as a going concern. Where judgment has been rendered for conversion of an interest in that business, the future profits of that business cannot be asserted as a detriment suffered in addition to such conversion. To permit appellee to secure a judgment against Hohly based upon this factor is to permit a different valuation to be placed upon identical property in these two judgments.

Lutz contends that he is nevertheless entitled to .damages from Hohly (over

and above the sale price of the converted securities) because his partnership interest, with the significant voice it gave him in controlling partnership affairs under the agreement, was more valuable than his minority stock interest in a close corporation.

The record does not bear this out. Lutz suffered no detriment by virtue of his minority position. He received the same value per share as did Sheldon's estate for Sheldon's controlling interest.

■ As a further element in this component of detriment the district court has found that Lutz was entitled (under Cal.Civil Code, § 3336) to "fair compensation for the time and money properly expended in pursuit of" the converted property. The amount of $3,310.07, incurred by Lutz for accounting services, was allowed in this respect.

It may be noted that this item constitutes special damages, National City Finance Co. v. Lynch (1928), 94 Cal. App. 557, 271 P. 540, and as such must be specifically pleaded under both federal rules and California law. Rule 9(g) F.R.Civ.P.; National City Finance Co. v. Lynch, supra. Lutz has failed to make any allegation in this respect. Further he failed to present any evidence on this item of damage until the hearing on remand.

■ Still further, it appears that the accounting services involved were first rendered on August 11, 1957, some ten months after Lutz had filed his creditor's claim in the Sheldon estate demonstrating that he had successfully traced and identified the converted property. These expenses, then, were incurred in preparation for litigation and not in pursuit of property. Compare Pacific Postal Telegraph Cable Co. v. Bank of Palo Alto (9 Cir. 1901), 109 F. 369, 54 L.R.A. 711 and Viner v. Untrecht (1945), 26 Cal.2d 261, 158 P.2d 3, with Oakland California Towel Co. v. Roland (1949), 93 Cal.App.2d 713, 209 P.2d 854.

For these reasons the item in question cannot be allowed as damages.

■ The second component in the district court's allowance of damages related to Hohly's liability for constructive fraud. It involved the unjust enrichment of the Sheldons who allegedly obtained various secret benefits from their control of the partnership, as is discussed more fully in our treatment of the appeal of Mae Sheldon.

The district court was in error in holding Hohly liable with Mrs. Sheldon in this respect. None of the concealed benefits ever accrued to Hohly. There is nothing to suggest that he was enriched by reason of any breach of duty as corporate director.

Judgment against Hohly must be reduced to conform to that against the bank.

*Appeal of Mae Sheldon.*

Judgment against Mae Sheldon, from which the former appeal was taken, was based upon liability for conversion and constructive fraud. Judgment was in a sum equal to judgment against the bank ($31,566.25), plus the additional sum of $15,000 for detriment suffered by Lutz, and benefits and advantages obtained by Mae Sheldon as a result of her constructive fraud.

On the former appeal we recognized that additional benefits were proper considerations in assessing damages over and above the loss by conversion. The trouble was that there were no findings to support a judgment based upon these factors. The matter was remanded for further findings.

The district court has now made further findings, and judgment against Mae Sheldon has (as was judgment against Hohly) been increased to $55,000.

Just how the court arrived at this figure does not appear. As in the case of Hohly, however, from the findings we do know the nature of the additional detriment to Lutz, and the benefits and advantages accruing to Mae Sheldon, which the court regarded as justifying an award of damages over and above the loss by conversion.

The additional detriment to Lutz which was found to exist consisted of the loss of partnership profits and the expenditure of funds for accounting services in pursuit of the converted property. For the reasons set forth in our opinion on Hohly's appeal these items are rejected as to Mae Sheldon as well.

The benefits to Mae Sheldon which the court has found to exist are the following:

■ 1. Profit realized by the partnership on a Government contract, which profit Sheldon took to himself.

Lutz characterizes this transaction as one in which Sheldon put the money received in his own pocket. He did no such thing. It was deposited to the partnership account. Sheldon's misconduct was in taking credit for this profit upon his capital account with the partnership—treating it as his capital contribution—and using it as justification for increasing his interest in the corporation over that which he had had in the partnership. This wrong was fully righted, when, by its earlier judgment affirmed by us, the district court restored to Lutz his 9-percent interest and deprived Sheldon of his increased interest, partially attributable to the contract profits. This transaction cannot now be regarded as justification for further judgment against Mae Sheldon.

■ 2. A shifting of Sheldon's personal obligations to the corporation.

The district court found that $78,571.-88 of losses suffered by Sheldon in connection with his oil ventures had been assumed by the corporation. The record shows that Sheldon, as president, had acquired for the corporation certain interests in oil leases, which had resulted in losses to the corporation. There is nothing in the record, however, with one exception, to show that these interests had been acquired from Sheldon himself; or that he had, through these corporation acquisitions, relieved himself from any personal loss or received any personal benefit. The one exception was a transfer by Sheldon to the company for $2,500 of an interest in an oil well. There is no evidence, however, that this particular interest caused the company any loss. The most that can be said of the record is that it shows poor business judgment on behalf of the corporation with regard to these transactions. The transactions, however, cannot justify judgment against Mae Sheldon on the basis of additional benefits received.

3. Expense allowances to Sheldon.

The district court found that the Sheldons had been unjustly enriched to the extent of $14,814 in payments made by the corporation to Sheldon for expenses which had not been accounted for.

There is no dispute as to the fact that this sum was paid. Mae Sheldon has introduced no evidence whatsoever as to the manner in which these sums were utilized by Sheldon. It is not unjust to impose the burden of proof on her since only she could document the uses to which the sums received were put. This sum, in our judgment, is thus a proper item of benefit to support additional recovery against Mae Sheldon.

4. Salaries of Sheldon and Mae Sheldon paid by the corporation.

The corporation paid salaries to the Sheldons as follows:

To Sheldon, for services as president, from February 1, 1955, to March 3, 1956, the sum of $76,852.43.[1]

To Mae Sheldon, for services as president, from March 5, 1956, to May 9, 1956, the sum of $3,500.

On September 1, 1955, the board of directors of B. H. Sheldon Company resolved to set Sheldon's salary at 15 per

---

1. Of this sum the trial court found that the sum of $4,776.07 was intended to be compensation to Sheldon for his services from March 18, 1954, to February 18, 1955, thereby primarily comprising partnership pay to which Sheldon was not entitled. This finding is clearly erroneous because it contradicts the only evidence in the record on this point, testimony from Lutz's accountant that the payment was for February, 1955, after the partnership had been terminated.

cent of the corporation's profits before taxes (exclusive of his salary), but no less than $5,000 per month. It was on the basis of this action that the salary in question was paid to Sheldon.

However, if Lutz's consent to incorporation is to be regarded as equitably set aside, as indicated in our earlier opinion, Lutz cannot be bound by any action of the Board in fixing salary.

But this does not mean that the Sheldons after February 1, 1955, must be thought of as acting in the capacity of partners rather than corporate executives and as unjustly enriched to the extent of any compensation received. While it would be unconscionable to deny Lutz relief from fraud, it would be equally unconscionable to deny the Sheldons even quantum meruit reward for their efforts on behalf of the enterprise by holding them, for unjust enrichment purposes, to be partners subject to the rule of Vangel v. Vangel, supra.

 Under California law a corporate officer, unlike a partner serving in an executive capacity, is entitled to receive for his services what they are reasonably worth. Fraylor v. Sonora Mining Co. (1861), 17 Cal. 594. Beneficial services rendered without compensation having been fixed but under circumstances negativing any gratuitous intent may be compensated to the extent of their reasonable value. Bassett v. Fairchild (1901), 132 Cal. 637, 64 P. 1082, 52 L.R.A. 611.

The extent to which Mae Sheldon should be held accountable for salary benefits is thus, in accordance with the terms of our remand, the extent to which the sums received exceeded the reasonable value of the services rendered.

Upon this matter the court has made alternative findings.

First it has found that Sheldon waived and disclaimed any right to salary. This finding, in our view, is clearly erroneous. While there was testimony that Sheldon, prior to the partnership agreement, had said that he did not wish any salary, it is clear that he later regarded himself as entitled to salary and had told Lutz so prior to incorporation of the business. There is nothing whatsoever in the record to suggest a disclaimer or waiver of salary as to services rendered to the corporation.

Next the court has ruled that on equitable principles Sheldon was not entitled to salary because of his acts of fraud. The court apparently regarded this as a proper application of the general rule that a trustee's compensation is allowed only to faithful stewards.

 This doctrine has no application here. If Sheldon was an unworthy trustee, it was in his general partner-limited partner relationship with Lutz. We are not here concerned with any obligation on the part of Lutz as a limited partner to pay salary to Sheldon as a general partner. Nothing in the record suggests that Sheldon defrauded the corporation, or that in his relation to the business he was unfaithful in the performance of his fiduciary duties. Since we are evaluating his services to the corporation, and not to Lutz, the traditional equitable limitation on the compensation of a trustee cannot appropriately affect his quantum meruit rights.

The Sheldons, then, were entitled to receive for their services to the corporation what those services were reasonably worth.

There is no evidence as to the nature or extent of services performed by Mae Sheldon, and thus nothing to support the payment to her of $3,500.

Evidence as to the services performed by Sheldon is, however, ample. It appears that he was chief executive officer of the business for twenty months, during which period he assumed full responsibility for the conduct of the business, and during which time the business grew to become the largest trailer business on the Pacific Coast. He negotiated all agreements with dealers. He arranged for the manufacture of the trailer units and their delivery to the franchise dealers. He participated in the design of the trailers. He was chief financial

officer. He "saw where the money came from and paid the bills." The trial judge himself commented during the hearings: "That man Sheldon was the dynamo of the enterprise. I don't think there is any question about that. He ran every aspect of it, as I see it. He not only ran it, he was the dictator of it in every respect."

Notwithstanding this evidence, the district court has found that Sheldon's services to the corporation were insubstantial, that he devoted considerably less than his entire time to it, and that others contributed more importantly to the venture's success. From the entire record we find this "de minimis" approach without any support whatsoever. Sheldon was not a mere cog in the machine. He was the driving force, and there is no evidence that the amount of time he devoted to corporate affairs, in the light of his managerial capacity, was less than adequate.

As to the value of Sheldon's services, the only evidence presented was on behalf of appellants. Two disinterested witnesses, expert in the field of executive compensation, testified respectively that the reasonable salary for the thirteen-month period in question at a minimum would be $71,150 and $77,000. Appellant Hohly testified to a minimum of $70,000. One subordinate company executive received $650 a month, and another $76,389.44 for the full twenty-month period, or an average of nearly $4,000 a month. During the hearings the trial judge commented that $1,000 a month wouldn't be great pay for such a position and would not be sufficient to attract a competent executive, let alone one sufficiently skilled to make such a venture prosper. No rebuttal testimony was offered.

Notwithstanding this state of the record, the district court has found (as an alternative to its determination that no compensation whatsoever was payable) that Sheldon's services were worth no more than $600 a month, or $7,800 for the thirteen-month period.

The record does not offer any explanation for this disregard of the testimony of disinterested witnesses who were in no way impeached or discredited—testimony which was not only undisputed but upon its face appears wholly reasonable.

■ Expert testimony, including testimony as to the reasonable value of services rendered, is not conclusive upon the trier of fact, even though unimpeached and uncontradicted, since the trier may apply his own experience or knowledge in determining how far to follow the expressed opinion.

■ However, this is subject to the general rule that the trier may not act arbitrarily in disregarding uncontradicted and entirely probable testimony of witnesses whose qualifications and judgment have not been discredited. See, e. g., In re Williams' Estate (9 Cir. 1958), 256 F.2d 217; Fitts' Estate v. C. I. R. (8 Cir. 1956), 237 F.2d 729; Boston Ins. Co. v. Read (10 Cir. 1948), 166 F.2d 551, 2 A.L.R.2d 1155.

Lutz contends that the district court was not acting arbitrarily in disregarding the testimony in question, but was justified in so doing since a proper foundation had not been laid in that the witnesses were all permitted to assume that the services had been performed by an honest officer, devoting his best efforts to the business.

Accepting this contention as the only explanation forthcoming, it would appear that the district court by some undisclosed measure discounted the value of Sheldon's services to the corporation, by virtue of the dishonesty of his treatment of Lutz and his neglect of his duties. For reasons already stated, this was error.

The lowest figure on the value of services rendered, supportable by the record, is, then, $70,000. This figure, to avoid necessity for a remand, we shall accept as the reasonable value of Sheldon's services to the corporation. The maximum benefit received from the salary payments over such value would then be $6,852.43. This figure, to avoid necessity for a remand, we shall accept as the extent of the enrichment of Mae Sheldon

by virtue of the salary payments to her late husband.

Additional benefits to Mae Sheldon to be taken into consideration in addition to conversion loss are, therefore, the following:

| $14,814.00 | Expense allowances |
| $ 3,500.00 | Salary of Mae Sheldon |
| $ 6,852.43 | Salary of B. H. Sheldon |
| $25,166.43 | Total |

9 per cent of which (Lutz's share) is $2,-264.97.

Judgment against Mae Sheldon must be reduced to a sum in conformity with the judgment against the bank (for conversion) plus the 9 per cent figure above specified (for constructive fraud).

The fixing of a date from which interest on this latter (constructive fraud) sum shall run presents a troublesome problem since the figure is made up of a multitude of individual payments each received on a different date. In our judgment this problem can best be solved by arbitrarily fixing what we regard to be a fair median date. The items involved appear to have been received by the Sheldons during the period from September, 1954, through May, 1956. We fix July 1, 1955, as the median date from which interest on this sum shall run.

Accordingly judgment of the district court in favor of Appellee is modified as follows:

1. Judgment against the Security National Bank as executor of the will of Ben H. Sheldon for conversion is reduced to $19,894.40 together with interest thereon at 7 per cent per annum from May 8, 1956.

2. Judgment against Robert Hohly for negligence and constructive fraud is reduced to $19,894.40 together with interest thereon at 7 per cent per annum from May 8, 1956.

3. Judgment against Mae Sheldon for conversion and constructive fraud is reduced to the sum of the following figures: 1. $19,894.40, together with interest thereon at the rate of 7 per cent per annum from May 8, 1956; 2. $2,264.97, together with interest thereon at the rate of 7 per cent per annum from July 1, 1955.

As provided by the district court, judgment against Robert Hohly and Mae Sheldon shall be reduced by any principal sum actually received by Appellee from the bank, and to the extent of such reductions shall not draw interest.

As so modified, judgment of the district court is affirmed.

Costs on appeal are awarded to Robert Hohly. No other costs are awarded.