No. 2,132.

MANUELITA WILLIAMS, by JESUS VILLANUEVA, her Guardian, RESPONDENT, *v.* FRANCISCA A. MacDOUGALL, APPELLANT.—Impleaded with' JOSE C. CARRILLO, *et al.*

WILL—CONSTRUCTION OF.—ALLOWANCE FOR THE SUPPORT AND EDUCATION OF AN ILLEGITIMATE CHILD.—The testator charged the bequest of his estate with the "support and education" of a minor illegitimate child, without naming any amount therefor. *It was held*, that, in determining what should be the style and manner of education and support, the conclusion must be arrived at by reference to the will, and on a fair and just interpretation of its provisions, considering all the circumstances which surrounded the testator, and the motives which probably actuated him.

COUNSEL FEES.—As a general rule, counsel fees are not recoverable as costs by a successful party in actions either at law or in equity.

IDEM.—In equity the ordinary costs of the action are awarded or withheld at the discretion of the Court.

IDEM—Where counsel fees are allowed it generally proceeds on the ground of the contumacy of the party, or that the relief granted would be ineffectual without such allowance.

APPEAL from the District Court of the Seventeenth District, Los Angeles County.

The case is stated in the opinion.

*James H. Lander*, for Appellant.

*Sharp & Lloyd*, of Counsel:

Cited *Cloud* v. *Martin* (2 Dev. & Batt. Ch. R.)

*Glassell & Chapman*, for Respondent:

Relied on 2 Barb. Chan. Practice, 331, '2, '4, '5 and '7; *Gray* v. *Dougherty* (25 Cal. 282.)

CROCKETT, J., delivered the opinion of the Court:

In 1856 Isaac Williams died in the County of San Bernardino, leaving a large estate, valued at more than $100,000, and two legitimate daughters and several illegitimate chil-

dren, amongst the latter being Manuelita, then an infant of
tender years.   He also left a last will and testament, which
was duly probated, by the tenth clause of which he devised
to his two legitimate daughters, Merced and Francisca, the
whole of his estate, after the payment of certain specific
legacies, amongst which was one for a small amount to
Manuelita.   But the devise to Merced and Francisca, as
residuary legatees, is made "subject to the payment of my
just debts, the expenses of administrators and executors,
*and the education and support, out of the rents and profits
thereof,* of the hereinbefore named minor children, my said
daughters Merced and Francisca, and Victoria, Conception,
Refugia, Feliciana, Manuelita and Francisca, until each one
of the six last named shall have attained the age of twenty-
one years, or have married," when the maintenance shall
cease.

The two legitimate daughters were afterwards married,
and with their husbands, are the defendants in this action.
Certain legal proceedings were thereafter commenced in the
District Court for the distribution and settlement of the
estate, wherein a decree was rendered awarding to the two
residuary legatees the property devised to them, subject to
the payment, until the further order of the Court, of the
sum of $200 per annum, for the "maintenance and suitable
education for the infant defendant, Manuelita, daughter of
Jesus Villanueva; and that said maintenance remain a
charge upon the estate until said Manuelita shall attain the
age of twenty-one years or shall marry."   This allowance
was paid from time to time, until the year 1863, when the
mother of Manuelita, acting as her natural guardian, though
not then her statutory guardian, applied to the Court to
increase the allowance on the ground that the advancing age
of Manuelita demanded greater expenditures for her educa-
tion and support, and that the sum first allowed was wholly
inadequate.   The Court, thereupon, entered an order increas-
ing the allowance to $500 per annum ; from which order, or
from a subsequent order to enforce the performance thereof,
the defendants appealed to this Court.

· Whilst the appeal was pending, an agreement of compromise was entered between the mother of Manuelita and the defendants, whereby it was stipulated that the appeal should be dismissed, and the annual allowance should be $350 instead of $500. On filing this stipulation in the cause the former decree was modified so as to fix the allowance at $350 per annum. It appears that out of the first annual instalment there was paid by the mother $100 to her attorney, who procured the order. In pursuance of this decree, the $350 was regularly paid for the years 1863, 1864, 1865 and 1866 ; the last semi-annual payment of $175 having been made in May, 1867. The present proceeding was commenced in June, 1868, and is an application to the District Court, not only to increase the annual allowance, but also to compel the payment of the difference between $500 and $350 per annum from May, 1863, to the present time, together with the $100 paid to the attorney in the former proceeding, and counsel fees to the amount of $500 in this action. It was referred to a referee to take the proofs and report a judgment, and after hearing the testimony he reported the facts, with his conclusions of law, to the effect that the annual allowance should be increased to $800 in gold coin ; that the defendants should pay the difference between $500 and $350 annually, from May, 1863, to the date of the new decree ; should refund the $100 paid to the former attorney, and should pay $500 counsel fees in this action. This report was affirmed by the Court, and a judgment was entered accordingly ; from which, as well as from the order denying a motion for new trial, the defendants have appealed.

It appeared in evidence, that one of the defendants, Mrs. Carrillo, one of the residuary legatees of Williams, is in somewhat straitened circumstances ; and, in some method, which does not appear, must have lost, or been deprived of, the handsome patrimony derived from her father. The other defendant, Mrs. MacDougall, is proved to have an income of about $4,500 per annum, and the burden of the allowance to Manuelita appears to have fallen solely upon her.

There can be no room for doubt, that, under the will, Manuelita is entitled to a reasonable allowance for her sup-

port and education, out of the estate devised by Williams to his two daughters, Merced and Francisca. The only difficulty lies in determining what sum, under all the circumstances, would be a proper and suitable allowance. The will is entirely silent in respect to the style, mode or manner in which the testator desired his daughters to be educated or supported. It provides only for their "education and support," without defining how they are to be educated, in what style they are to be supported, or specifying any sum to be devoted to that purpose. The referee and the District Court appear to have proceeded on the theory that it must have been the intention of the testator that Manuelita should be educated and supported in a style commensurate with his wealth, and intended to charge upon the estate devised to his two daughters the expense of maintaining and educating Manuelita in the same manner as if she had shared equally with them his large fortune. But the fact that he devised to his legitimate daughters much the larger portion of his whole estate, whilst he devised to Manuelita but a mere pittance, furnishes conclusive evidence that he did not design to place them on the same footing. Nor is it reasonable to infer that he expected or intended that this illegitimate child, for whom he made such scanty provision out of his ample means, was to be luxuriously supported or very highly and expensively educated. The more reasonable conclusion is, that he desired her to be comfortably and decently supported, and reasonably well educated, so as to fit her to occupy creditably her proper and natural position in life. But if he had intended her to be very highly accomplished and to enjoy all the advantages of the highest and most expensive academies, it is most strange that he made no such provision in his will, and particularly that he did not set apart a specific fund for this purpose.

We think the conclusion is irresistible that the testator intended Manuelita to be comfortably maintained and reasonably well, but not expensively, educated. There is no contrariety in the proof that the School of the Sisters of Mercy in Los Angeles, where Manuelita has been placed, is the best in the southern portion of the State, and affords excel-

cellent means for a good education, at a comparatively moderate cost. It is quite evident that $800 per annum is considerably more than will be required to support her comfortably, and educate her reasonably well, at this or any other academy in that portion of the State. We are satisfied from the testimony that an annual allowance of $500 will be quite sufficient to maintain and educate her in the style contemplated by the testator. Nor do we perceive any sufficient reason why the defendants should be required to pay the difference between the sums of $500 and $350 annually, from May, 1863, to this date. The mother was the natural guardian of her child, and on her application the allowance was increased to $500 ; but she subsequently stipulated that it might be reduced to $350 per annum, and it was so done by a decree of the Court, with her consent. We find nothing in the record to justify the inference that the stipulation or amended decree was procured by fraud, or were for any reason invalid.

The principle which should regulate the allowance in this case is not that which governs an application for alimony or for necessaries furnished to a deserted wife or child. In the case of alimony the husband, in the contract of marriage, undertakes to furnish to the wife support bearing a just relation to his means and appropriate to her condition in life ; and the Courts will enforce this contract. In the case of a deserted child, born in wedlock, the law casts upon the father the same duty, and will compel its performance. But however strong may be the moral obligation of a father to maintain and educate an illegitimate child, the law, for reasons of public policy, does not impose on him any obligation for its education or support. Whatever he may do in that behalf is his voluntary act, resting in no legal obligation. In this case the father, in his will, has seen fit to provide for the support and education of this child. But in determining what shall be the style and manner of education and support, we must arrive at a conclusion by reference to the will, and on a fair and just interpretation of its provisions, considering all the circumstances which surrounded the testator and the motives which probably actuated

him. Interpreting the will by these lights, we are satisfied the testator intended for Manuelita only a comfortable and decent support and a reasonably good, but not an expensive and thoroughly complete education. From the proofs in the cause we are convinced such a support and education as he contemplated can be procured for $500 per annum.

The only remaining question relates to counsel fees. The general rule is that counsel fees are not recoverable as costs by a successful party in actions either at law or in equity. In equity the ordinary costs of the action are awarded or withheld, at the discretion of the Court. (*Gray* v. *Dougherty*, 25 Cal. 282.) And, doubtless, there are cases in which a Court of equity will award counsel fees as a part of the relief granted, and without which the relief would be nugatory. In the case of a series of acts to be performed at short intervals, through a long period of time, if the party charged with the obligation should contumaciously refuse on each successive occasion to perform the required act, and thereby impose on the opposite party the necessity, on each separate occasion, of employing counsel to compel a performance, a Court of equity would award counsel fees as a part of the costs, not only with a view to the contumacy of the party in default, but for the further reason that otherwise the relief granted might be wholly ineffectual. The successive counsel fees in some cases might absorb the whole or so much of the subject-matter of the litigation as practically to defeat the ends of justice. But this case does not come fairly within that category. The first allowance of $200, fixed by the Court, appears to have been regularly paid up to 1863. Up to that period the defendants cannot be deemed to have been in default, inasmuch as they had complied with the decree of the Court. Nor were they bound to pay any greater sum, until ordered by the Court to do so. The Court having assumed jurisdiction over the subject of the allowance, the defendants were subject to its decrees, to be made from time to time; but were not otherwise amenable to Manuelita or her guardian. By the terms of the original decree the Court retained its control over the subject, and the power to modify its allowance, as cir-

cumstances required.   When applied to for an increased
allowance, the defendants may very properly have replied
that the whole matter was to be regulated by the Court, and
·that the application must be made in that quarter.   There
was nothing contumacious or oppressive in this.   On the
contrary, no other course could have been properly pursued.

When the Court fixed the amount at $500, in 1863, the
defendants appealed from the order, ·as they had a right to
do.   For aught that appears, they may have believed in
good faith that the allowance was too large ; and the mother
of Manuelita finally acquiesced in this view, by consenting
to its reduction to $350 per annum, which was thereafter
regularly paid up to May, 1867.   At the last named period,
the mother again desired the annual allowance to be in-
creased ; and the defendants may very properly have replied,
as on the former occasion, that her application must be
addressed to the Court, which had assumed the exclusive
right to deal with the subject.   So long as the defendants
comply with the orders of the Court, we perceive no ground
on which they can be justly charged either with contumacy
or any breach of duty towards Manuelita.   When the ques-
tion of the allowance came before the Court, they had the
·right to be heard as to the amount, and if they were not
satisfied with the decree, the law gave them the right to
appeal.

We see nothing in the record to justify the belief that
they have abused this right, or used it oppressively, or that
they have not in all respects fully performed their duty
towards Manuelita under the will of their father.   Under
these circumstances, we do not deem this a proper case for
the allowance of counsel fees; and we may also remark,
that there was no proof in the cause as to the reasonable-
ness of the fees to be paid.

The judgment is reversed and cause remanded, with an
order to the District Court to modify its decision in accord-
ance with this opinion, and increasing the annual allowance
to $500 in United States gold coin, from May 7th, 1867 ; but
without counsel fees, and omitting from the decree that por-

tion of it which requires the payment of the difference between $500 and $350 annually from May, 1863.