[Sac. No. 690. Department Two.—October 4, 1900.]

## WILLIAM HAYS, Appellant, v. EWELL WINDSOR and ALICE WINDSOR, Respondents.

REPLEVIN—TENANTS' SHARE OF CROP—BILL OF SALE BY SURVIVING PARTNER—CONSIDERATION—PROTECTION AGAINST CREDITORS.—The lessor of a farming lease to copartners for one-half of the crop, who, prior to the lease, became surety upon a note of one of the partners who died, and to whose share of the crop his widow, a daughter of the lessor, was entitled, cannot maintain an action to recover possession of the tenants' share of the crop under a bill of sale obtained by him from the surviving partner, without a transfer of possession, and without other consideration than said suretyship, by means of a misrepresentation made by him that the creditors of the firm were about to attach the property, and for the avowed purpose of protecting it against such attachment.

ID.—PARTY TO FRAUD NOT ENTITLED TO RELIEF.—Whether the lessor and the surviving partner were parties to a fraudulent intent *in pari delicto* or not, or whether the fraud and deception were on the part of the lessor alone, he cannot avail himself of his own fraud, and cannot be aided by the court to obtain a possession not given to him under the bill of sale so procured by him.

ID.—DAMAGES—COUNSEL FEES.—Counsel fees not paid can in no case be recovered as damages; but the prevailing party in an action of replevin cannot recover counsel fees, even though paid, as damages for the taking and withholding or detention of the property, or for its conversion, where no other expense than counsel fees appears to have been incurred in the pursuit of the property.

ID.—PURSUIT OF PROPERTY—OPINION AS TO DAMAGES—PARTICULARS NOT STATED.—The opinion of a party that he has been damaged in a specified sum for trouble and expense and time consumed in the pursuit of the property, without the statement of particulars on which the opinion is based, is not sufficiently certain to justify damages for pursuit of the property.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. F. T. Nilon, Judge presiding.

The facts are stated in the opinion of the court.

R. Clark, for Appellant.

W. H. Grant, for Respondents.

THE COURT.—Plaintiff brings the action to recover the possession of certain grain of which he alleges ownership and right of possession. The cause was tried by the court without a jury and defendants had judgment, from which and from the order denying a new trial plaintiff appeals.

It was alleged in the separate answers of the defendants that defendant Ewell Windsor and Stirling P. Windsor, his brother, deceased husband of defendant Alice Windsor, were copartners and tenants of plaintiff under a farming lease for the cropping season 1895-96, whereby plaintiff was to receive one-half of the grain raised as compensation for the use and occupation of plaintiff's land; that in March, 1896, Stirling died and defendant Alice became administratrix of his estate, which is still unsettled, but to the whole of which she is entitled, it amounting to less than fifteen hundred dollars in value; that said copartnership was indebted to sundry persons beyond its assets, and that the crop in question was the only property of any considerable value owned by the partners; that defendant Ewell Windsor was the sole surviving partner and as such entitled to settle up the business of the copartnership; that in May, 1896, plaintiff falsely and fraudulently, and with the intention of deceiving and defrauding these defendants, represented to them that the property in the complaint described was about to be attached by creditors of defendants; that he (plaintiff) had consulted with an attorney in the interest of defendants, and had been advised by him that it would be to the advantage of these defendants and each of them if they would execute a bill of sale conveying said grain, and that by so doing their property would be protected from such threatened attachment; that if such bill of sale should be executed and delivered by these defendants to plaintiff, no one need know anything about it unless some creditor should attach said property; that the plaintiff is the father of the defendant Alice Windsor, and as such these defendants relied upon him and believed the aforesaid false and fraudulent representations, and in consequence thereof executed to the plaintiff herein a bill of sale of said goods and chattels, and plaintiff bases his claim thereto on said bill

of sale, and not otherwise; that there was no consideration for said pretended sale, and it was mutually agreed by the parties thereto at the time of its execution that there should be no change of possession of said grain, nor any delivery or transfer thereof, but that the property should remain in the possession of defendants; that up to the commencement of this action defendant Ewell Windsor, as surviving partner of the firm of Windsor Brothers, has kept and maintained exclusive possession of said property.

Defendants prayed for a return of the property, or, if delivery could not be made, that they have judgment for the value. The action was commenced on July 27, 1896, on which day part of the grain was in warehouse, part in sacks in the field, and part being harvested. The sheriff took possession under the writ, and by agreement defendants continued harvesting the grain and the sheriff took actual possession as fast as harvested. He testified: "On the 16th of November, 1896, the parties entered into a stipulation authorizing me to sell the grain, and turn over to the clerk of this court all the proceeds of the sale to abide the termination of this action," amounting in all to thirteen hundred and fifty-seven dollars and thirty-four cents. The court found the foregoing allegations of the separate answers to be true. The court also found that plaintiff was never in possession of the property, and that at the commencement of the action defendant Ewell Windsor was in possession and so remained until possession was taken by the sheriff in this action; also that plaintiff did not demand possession of the property before commencement of the action or at any other time, nor did defendants refuse to deliver possession.

The bill of sale reads as follows:

"To whom it may concern:

"That we, the undersigned, have for the sum of five hundred dollars this day paid to us sold to Wm. Hays all our interest in the growing crop on the (land described), April 15, 1896.

"EWELL WINDSOR.
"ALICE WINDSOR."

1. There is no pretense that there was any consideration for the sale, other than it appears that plaintiff was surety on a

note executed prior to the copartnership of Windsor Brothers by Stirling Windsor, no part of the proceeds of which went into the partnership or in producing the crop in question. This note was unpaid at the time and still is unpaid either by the principal or the surety. Defendant Ewell Windsor testified: "Neither I nor the partnership . . . . owed him [plaintiff] anything. He first spoke to me about making him safe the day of my brother Stirling's funeral, March 21, 1896, I believe, and that was the first time he said to me that creditors would 'jump upon me' as soon as they learned of Stirling's death; afterward he spoke of the bill of sale; it was his proposition, and when he made it he said that McCullough (who held a crop mortgage on part of the crop) was the only man who was safe, and the other creditors would jump on me. He asked me if I would not as soon see him safe [on his surety debt for Stirling] as the other fellows. I told him yes, and I said I would see a lawyer about it when I went to town. He said that was not necessary, as he had a lawyer who would attend to it, and it would not cost us anything." It further appeared that he was the father of Alice and that defendants trusted plaintiff in the matter. Ewell testified: "I did not intend to defeat or defraud any creditor of myself or the firm. I only wished to stave off litigation until I could harvest and sell the crop, and then I thought I could pay off everything. But without that crop the partnership was hopelessly insolvent." The evidence was sufficient to sustain the findings of fact. Conceding, as is urged by plaintiff, that defendants had the right to secure him against possible loss by reason of being surety for Stirling's debt, defendants' testimony would warrant the conclusion that such was not their purpose or intention in making the bill of sale. The real and only object they had in view when the bill of sale was signed, as they testified, was to prevent the property being wasted by litigation so that the creditors of the partnership could be paid. Mrs. Windsor testified: "Plaintiff first spoke to me about the bill of sale, as it would protect us until after harvest; he said that McCullough was the only man who was safe, and that the other creditors would 'jump on us.' . . . . There was no consideration for the bill of sale, and nothing was to be said about it unless the creditors should attach us.

It was simply to protect us until after harvest, when there would be money enough to pay all. We intended to pay all as soon as we could. I signed the bill of sale because I thought it would be best for all." Nothing was said to her about plaintiff being surety for her husband, and this fact did not enter into her action in the matter, nor did it furnish the motive for Ewell Windsor's signing the bill of sale. His testimony shows that his object was solely to avoid attachments and preserve the property for the partnership debts.

No consideration was paid for the bill of sale, and if there was fraudulent intent in making it, shared in by all the parties thereto, they would be *in pari delicto,* and what was said in *Ager v. Duncan,* 50 Cal. 325, would apply: "In such cases it is immaterial by which of the parties the fraudulent nature of the contract is disclosed to the court. As soon as the fraud is made to appear by either of the parties, the court will refuse to interfere and leave them as they were. In other words it will not enforce a contract founded on the mutual turpitude of the parties to it. And for the same reason, if the contract has been executed, the court will not aid either party to escape its consequences."

If the facts warrant the conclusion that defendants had no fraudulent intention of defeating payment to their creditors, but really intended by the transaction to make payment more certain, then the fraud and deception was on the part of plaintiff alone, and the rule laid down in *Vitoreno v. Corea,* 92 Cal. 69, would apply. It was there held that two persons may concur in an illegal act without being deemed *in pari delicto.* In the case cited the court said: "In this case the defendant alone was guilty of the fraud. He cannot avail himself of his own fraud as a defense. 'For no man shall set up his own iniquity as a defense, any more than as a cause of action.'" (Quoting Lord Mansfield in *Montefiori v. Montefiori,* 1 W. Black. 364.)

Whether, therefore, plaintiff and defendants were equally guilty of fraudulent intent, or whether defendants were innocent of such intent and plaintiff alone was guilty, plaintiff cannot recover. (See the subject discussed in Bump on Fraudulent Conveyances, secs. 442-44, and cases there cited.)

2. The court awarded one hundred and seventy-five dollars to defendant Ewell Windsor, and to defendant Alice Windsor one hundred and twenty-five dollars as damages, and gave judgment accordingly. Ewell Windsor claimed in his answer two hundred and fifty dollars for counsel fees, which he testified he had agreed to pay his attorney for services in this case, and he also claimed one hundred dollars for "trouble and expense" and for "time consumed in the pursuit" of the property. Alice Windsor employed the same attorney, and claimed for his services the sum of one hundred dollars, and also one hundred dollars "as special damages for the wrongful taking and detention of the property." In support of his claim for these items Ewell Windsor testified to an agreement to pay the above amount to his attorney, and as to the other item he testified: "I have lost a good deal of time, have been deprived of the possession of the crop, and have been delayed in the payment of my debts, and I think I have been damaged in that regard at least one hundred dollars." Mrs. Windsor testified to the employment of the attorney and her liability to pay him one hundred dollars, and claimed "further damages by delay and trouble in the further sum of one hundred dollars." This was all the evidence on these questions.

Appellant contends that there is no evidence to support the judgment for any special damages except as to attorneys' fees, and that there is no authority of law for the latter item.

Aside from the question as to attorneys' fees, the evidence fails to show with any certainty any damage for the pursuit of the property; at most it gives the opinion of defendants that they were damaged, but states no particulars on which the opinion is based.

In *Murphy v. Mulgrew*, 102 Cal. 547,[1] it was held that the giving of a note by plaintiff to his attorney for his services in a replevin action would not support a finding for money expended by plaintiff in the pursuit of the property. In the present case there was but an agreement to pay the attorney. But apart from this state of the evidence we do not think the prevailing party in a replevin action can recover attorneys' fees as dam-

[1] 41 Am. St. Rep. 200.

ages for the detention or as damages for taking and withholding the property (Code Civ. Proc., sec. 667); nor are such fees to be included as part of the damages to be measured by section 3336 of the Civil Code. In some jurisdictions counsel fees are allowed under certain exceptional cases (Cobbey on Replevin, secs. 920, 921; Wells on Replevin, sec. 576; Shinn on Replevin, sec. 651); but our statute is as follows: "The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." (Code Civ. Proc., sec. 1021.) It was said in *Sanger v. Ryan*, 122 Cal. 52: "The code expressly provides for payment of attorneys' fees in foreclosure and contested election cases, enforcing mechanics' liens, partition cases, in probate matters and some others; and it was held in *Miller v. Kehoe*, 107 Cal. 340, that counsel fees may be allowed in equity in an action for the preservation or distribution of a fund where all parties have a common interest; but it was also said that the general rule is that even a successful party cannot recover counsel fees in an action either at law or equity, except in enumerated instances where they are expressly authorized by statute." (Citing *Williams v. McDougal*, 39 Cal. 85; *Salmina v. Juri*, 96 Cal. 418.) It was held in *Brooks v. Forington*, 117 Cal. 219, that "counsel fees are not costs or disbursements in the action allowed by the statute to the prevailing party." (Citing section 1021, *supra*.) The court said in *Spooner v. Cady*, 44 Pac. Rep. 1018 (not reported): "It has been strongly intimated by this court that money paid for attorneys in pursuit of property is not within the rule of damages declared by section 3336 of the Civil Code." (Citing *Greenbaum v. Martinez*, 86 Cal. 462; *McDonald v. McConkey*, 57 Cal. 325.)

The judgment is modified by striking therefrom the items of damages, and in other respects it is affirmed, as is also the order, each party to pay one-half of the costs of appeal.