[S. F. No. 5274.   Department Two—September 6, 1911.]

MARY A. COLBY, Appellant, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation), DAVID C. LERCARI et al., Copartners under the firm name of Lercari, Pera & Co., Respondents.

Equity—Relief Refused when Parties Are in Pari Delicto—Illegal Contract.—As a general rule, equity will not aid one party or another to an illegal transaction where they stand *in pari delicto,* but will leave them just where it finds them, to settle their differences without the aid of the court. This rule only applies where the parties are *in pari delicto*—where the illegal transaction is entered into voluntarily and the turpitude of the parties is mutual.

Id.—Parties Not in Pari Delicto—Consent Obtained by Duress.— Where, however, the party seeking the relief is not a free moral agent, and his consent to the illegal transaction is obtained through

duress, menace, or undue influence, he is not regarded as *in pari delicto* with the person obtaining his consent by the employment of such means, and will not be precluded from invoking affirmative relief in equity to set aside contracts or instruments so executed, or to defeat an attempted enforcement of them against him.

ID.—COMPOUNDING A FELONY AS CONSIDERATION—CANCELLATION.—One who is induced through duress, menace, and undue influence to execute conveyances, the consideration for which is the compounding of a felony, may maintain a suit in equity for their cancellation.

ID.—ESTOPPEL OR LACHES DOES NOT AFFECT CONTRACT.—The doctrine of estoppel by conduct or by laches or even ratification has no application to a contract or instrument which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no existence whatever, and neither action nor non-action of a party to it can validate it, and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity. A contract, the consideration of which is the compounding of a felony, is of such character.

ID.—FINDING AN ESTOPPEL AND LACHES—FAILURE TO FIND ON DURESS. —In an action to cancel certain instruments alleged to have been executed in consideration of the compounding of a felony, and to have been procured through the duress, menace, and undue influence of the defendants, in which the answer alleges facts claimed to constitute an estoppel and laches against the plaintiff, findings in favor of the defendant on the matters pleaded as an estoppel and laches are not determinative of the action, and do not render immaterial findings on the issues tendered by the complaint.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Mott & Dillon, and Lent & Humphrey, for Appellant.

Otto Irving Wise, Louis Hirsch, and Lawler, Allen & Van Dyke, for Respondents.

LORIGAN, J.—This action was brought to enjoin the defendant corporation from proceeding to sell a certain lot of land in the city of Los Angeles, to quiet the title of plaintiff thereto and to have canceled certain written instruments executed by plaintiff to the defendant corporation, and between her and the copartnership of Lercari, Pera & Co.

Judgment was entered in favor of defendants, from which and an order denying her motion for a new trial plaintiff appeals.

Various grounds are urged by appellant for a reversal of the judgment and order, but the main point insisted on is that the decision is against law in this, that the court failed to find on material issues raised by the pleadings.

Before proceeding to set forth particularly the facts alleged in the pleadings, and the findings made, it may be stated, towards a clearer understanding of the issues, that for several years prior to November 19, 1904, Fannie M. Colby, a daughter of plaintiff, was the bookkeeper of the firm of Lercari, Pera & Co., doing business in the city and county of San Francisco; that shortly prior to the above date the firm, claiming that Miss Colby had embezzled a large, but not then definitely ascertained amount of money from it, consulted the Morse Detective Agency of San Francisco in the matter. On the evening of November 18, 1904, accompanied by a detective connected with the Morse agency, and a member of the firm of Lercari, Pera & Co., Miss Colby left San Francisco for Los Angeles where the plaintiff, her mother, resided, and where the written instruments, the validity of which are questioned in this action, were executed on November 19, 1904.

These consisted of an agreement, a deed, and a trust declaration. The agreement, which was signed by Fannie M. Colby, and by the plaintiff, her mother, and the firm of Lercari, Pera & Co., contained an admission and an acknowledgment by Fannie M. Colby of an indebtedness to the firm in an unascertained and undetermined amount and an agreement on the part of plaintiff to pay the same to the firm as soon as the indebtedness was fixed and determined; the agreement also provided that the most practicable means should forthwith be adopted to ascertain as nearly as practicable the amount of the indebtedness, and that the conclusion of an expert, or experts, employed for that purpose should be conclusive evidence of the correctness of the amount, and that within thirty days after the indebtedness was so determined the plaintiff agreed to pay the amount thereof to Lercari, Pera & Co. together with the expense of ascertaining it. The agreement further provided that as security for the performance of its terms and the provisions of a declaration of trust accompanying the

same, the plaintiff should convey to the defendant Title Insurance and Trust Co. by a grant, bargain, and sale deed lot 2, block B, of the Morris Vineyard Tract in the city of Los Angeles, the property which is involved in this action. Pursuant to the terms of the agreement the deed called for was immediately executed by plaintiff to the Title Insurance and Trust Company, and following the execution thereof a declaration of trust was executed by plaintiff to the same company for the benefit of the firm of Lercari, Pera & Co. This trust declaration recited the execution of the agreement above referred to and the conveyance to the Title Insurance and Trust Company of the lot above described to secure the payment to Lercari, Pera & Co. of the indebtedness, when ascertained, together with the expenses of ascertaining it, and contained provisions for the sale of the premises by the trust company on demand of the firm if default was made in such payment, and the application of the proceeds to extinguish the indebtedness. These are the instruments, under the terms of which the defendant Title Insurance and Trust Company, was proceeding to sell the premises described in the deed from plaintiff to defendant when this action was brought by her to have the sale enjoined and these instruments all declared null and void, on the ground that each of them was obtained from plaintiff upon an illegal consideration and also by means of duress, menace, and undue influence.

In this latter regard it is particularly alleged in the complaint, after setting forth in *extenso* all the said written instruments and admitting their execution by her on November 19, 1904, that on said date and long prior thereto, and since, plaintiff and her family, consisting of three children, other than Fannie M. Colby, resided on said premises described in said written instruments; that plaintiff is a widow, over the age of fifty-two years and in very poor health, and said premises were used and maintained as a home for the family, her only income being derived from the rental of rooms in the house on said premises; that long prior to November 19, 1904, said Fannie M. Colby was employed as a bookkeeper by defendant Lercari, Pera & Co.; that on said last stated date plaintiff read in the daily papers published in the city of Los Angeles that said Lercari, Pera & Co. charged said Fannie M. Colby with the commission of a felony, to wit, the embezzle-

ment of funds of said partnership, and had said Fannie M. Colby in custody and intended sending her to jail; that plaintiff was greatly prostrated and unnerved by said news, and during said day and ever since has suffered extreme mental anguish, and on said day and still is unable to concentrate her thoughts on business matters, and on said day was possessed by a fear that her said daughter would be committed to prison, and of a desire to save her daughter therefrom and herself and family from the disgrace and shame of such imprisonment; that while in this condition a representative of said Lercari, Pera & Co. called on plaintiff and informed her that he was a detective and had said Fannie M. Colby in charge in the city of Los Angeles, but that she would not be permitted to go to the home of plaintiff except when accompanied by a detective; that shortly thereafter the defendant David Lercari, representing the firm of Lercari, Pera & Co. and its members, together with an attorney at law, called on plaintiff and informed her that her daughter was in the custody of a detective and guilty of embezzling the funds of her former employer, and would be sent to jail unless plaintiff agreed to pay all money alleged to be embezzled by the said daughter, and to secure such agreement, execute the deed heretofore referred to; that plaintiff protested against executing said instruments and requested that her daughter be released from custody and arrest, but was told that if she consented to make such agreement and deed, when she signed and delivered such papers her daughter would be released from custody and she would be permitted to take her said daughter home; otherwise her said daughter would be arrested and prosecuted for a felony— embezzlement; that plaintiff asked that the execution of said papers be delayed until the following morning, and that her daughter be permitted in the mean time to return home, but this was denied; that during all of said time and thereafter, until the signing and delivering of said agreements and deed, her daughter was deprived of her liberty and incarcerated in a room in a building in said city of Los Angeles and guarded by a detective in the employ of said defendants.

It is then further alleged that the fears entertained by her for the safety of her daughter and the charges made humiliated and prostrated plaintiff, and under the belief that her daughter would be prosecuted and sent to jail if plaintiff re-

fused to consent, she assented to the terms and conditions imposed upon her by said defendants; that thereupon said defendant allowed plaintiff to go to the place where her daughter was incarcerated, and permitted her and her daughter to converse for a brief time, but refused to allow said daughter to return home until said papers were signed; that thereupon, about eleven o'clock in the night, said defendants and their attorney returned to the home of plaintiff and induced her to sign said papers which she did only under the terms, condition, and promises and for the purposes hereinabove set forth; the said agreements and deed were thereupon taken from plaintiff and her daughter released from the custody of said detective and permitted to remain at the home of plaintiff; that at no point of said transactions and at no time during said day or night did plaintiff have any counsel or advice.

Then follow allegations of service of written notice on plaintiff March 14, 1905, by the defendant Title Insurance and Trust Company of the ascertainment by an expert that the indebtedness of Fannie M. Colby to the firm of Lercari, Pera & Co. was the sum of $9,886.69 and the expenses of ascertaining it $769, accompanied by a further notice that said Title Insurance and Trust Company would proceed to sell the premises described in the deed from plaintiff to defendant unless payment of these amounts was made within thirty days; these allegations are accompanied by an averment on the part of plaintiff that no conclusion was in fact reached by such expert, but that said indebtedness was wholly undetermined and that said Fannie M. Colby is not indebted to said firm of Lercari, Pera & Co. in the sum claimed to have been ascertained or in any sum at all.

Under these facts alleged, and the further allegation that the defendant Title Insurance and Trust Company had given public notice that it would sell the premises described in the deed to it and unless restrained would proceed to do so, plaintiff prayed that said agreements and deed be decreed null and void, for a temporary injunction restraining the sale of the property described in the deed to be made permanent by the final judgment, and that the title of plaintiff to said property be quieted.

The answer of defendants denied that said instruments were executed for the considerations set forth in the complaint, or

that they were executed otherwise than voluntarily, and in con-
sideration of the indebtedness of said Fannie M. Colby to the
firm of Lercari, Pera & Co.

In addition, defendants affirmatively plead facts under
which they asserted estoppel and laches against plaintiff.
Briefly stated, estoppel was predicated on the following alleged
facts: that plaintiff voluntarily proposed and offered to pay
to Lercari, Pera & Co. the indebtedness of Fannie M. Colby
when ascertained as provided in the instruments executed by
her; that Fannie M. Colby admitted prior to, and when said
instruments were executed, that she was indebted to Lercari,
Pera & Co. in a sum stated by her to be between twenty-five
hundred and five thousand dollars, but claimed by Lercari,
Pera & Co. to be from seven thousand to ten thousand dollars;
that plaintiff also admitted said indebtedness; that at said
time, as defendants and Lercari, Pera & Co. are informed and
believe, Fannie M. Colby was the owner of and possessed of
certain property of the value of about two thousand dollars;
that by reason of the execution by plaintiff of said agreement
defendant Lercari, Pera & Co. refrained at said time and has
since refrained from searching for or attempting in any way
to attach said property or to collect the amount of said in-
debtedness from said Fannie M. Colby, except pursuant to the
terms of the agreement executed by plaintiff; that at no time
has plaintiff in any way repudiated the admission of indebted-
ness contained in the written instruments or the oral admis-
sions thereof made by Fannie M. Colby at the time of their
execution except until and by the filing of this action, and that
said Lercari, Pera & Co. are without any other security for the
recovery of said indebtedness. Laches is predicated on the
same allegation. This action was commenced about July 6,
1905.

It is to be observed that under the facts alleged in her com-
plaint plaintiff based her right to have all these instruments
declared void upon several independent grounds. There were
allegations that the execution of said instruments were based
upon an illegal consideration, namely,—the compounding of a
felony charge against her daughter, which, if sustained by
evidence, made the agreement absolutely void under the gen-
eral rule applying to such contracts, and under section 1668
of the Civil Code. Aside from this, and independent of the

allegations of illegal consideration for the execution of said instruments, there were allegations that their execution was obtained through duress and menace exercised on plaintiff through the unlawful confinement of her daughter by defendants and threats to so unlawfully confine her until said instruments were executed (Civ. Code, secs. 1569-1570), and by undue influence in taking a grossly oppressive and unfair advantage of her distress (Civ. Code, sec. 1568), in procuring their execution. Issue was joined by defendants on all these allegations and evidence addressed to all of them on the trial. The court, however, made no findings whatever upon the issue of illegality of consideration for the agreements and the deed, or on the other issues of their procurement through duress, menace, or undue influence, but made findings in favor of defendants on their plea of estoppel and laches and in the terms plead by them, and upon these findings based its judgment in favor of defendants and denying plaintiff any relief.

On the appeal from the judgment appellant insists that the findings do not support the judgment on account of the failure of the court to find on these issues, and as the omission to find thereon was also urged as one of the grounds for a new trial in her motion therefor, it is likewise up for consideration here on the appeal from the order denying said motion. (*Kaiser* v. *Dalto,* 140 Cal. 167, [73 Pac. 828]; *Lyden* v. *Spohn-Patrick Co.,* 155 Cal. 177, [100 Pac. 236].)

Respondents, while conceding that, as a general rule, no judgment can be properly rendered unless there are findings upon all material issues presented, take the position that the court having found in their favor on their plea of estoppel and laches, it was not necessary to find on the other issues; that the finding so made necessarily defeated the right of plaintiff to recover, even if all the issues upon which the court omitted to find had been found in her favor. (*Brison* v. *Brison,* 90 Cal. 328, [27 Pac. 186]; *Windhaus* v. *Bootz,* 92 Cal. 622, [28 Pac. 557]; *Smith* v. *Dubost,* 148 Cal. 624, [84 Pac. 38].)

The theory of respondents, as we understand it, is that, whether the execution by plaintiff of the agreements and deed was procured through an illegal consideration and therefore void, or whether procured through duress, menace, or undue influence and voidable on that account at her election, it was unnecessary to find on any of these issues because, even if they

were all found in her favor, she would be precluded from ob·
taining any relief thereunder by reason of the findings of
estoppel and laches.

In the same connection it is claimed that, as far as the issue
as to the illegality of the consideration for the execution of the
agreements and deed is concerned, it was immaterial to find
on it, because respondents assert that it appears from the com-
plaint that as the consideration for the execution of the instru-
ments was the compounding of a felony, and therefore an
illegal consideration, all the parties, including plaintiff, were
*in pari delicto,* and under such circumstances equity will not
permit its aid to be invoked by any of the parties to such an
illegal transaction, either to enforce it if it remains executory,
or to set it aside or to restore the title which has been parted
with under it.

We do not deem it necessary to discuss what would be the
effect of the findings of the court as to estoppel and laches in
favor of defendants, if the issues in the case were simply as to
the procurement of the agreements and deed by duress,
menace, or undue influence, and the court omitted to make
findings on these issues, for certainly as to the issue of illegality
of consideration such findings of estoppel and laches could not
obviate the necessity of the court finding on that issue.

It is true that, as a general rule, equity will not aid one party
or another to an illegal transaction where they stand *in pari
delicto,* but will leave them just where it finds them, to settle
these questions without the aid of the court.   This rule is
universally recognized, and a few of the many authorities an-
nouncing it, are Pomeroy's Equity Jurisprudence, 3d ed., pp.
659, 667, 1703; *Atwood* v. *Fisk,* 101 Mass. 363, [100 Am. Dec.
124] ; *Ager* v. *Duncan,* 50 Cal. 325; *Hays* v. *Windsor,* 130 Cal.
230, [62 Pac. 395] ; *Chateau* v. *Singla,* 114 Cal. 91, [55 Am.
St. Rep. 63, 33 L. R. A. 750, 45 Pac. 1015], cited by respondent.

But this rule only applies where the parties are *in pari
delicto*—where the illegal transaction is entered into volun-
tarily and the turpitude of the parties is mutual.   Where, in
the cases cited, the rule has been applied, it will be found that
both parties entered into the illegal contract or transaction
there under consideration voluntarily, were equally culpable,
and relief was refused on that account.   Where, however, the
party seeking the relief is not a free moral agent, and his con-

sent to the illegal transaction is obtained through duress, menace, or undue influence, he is not regarded as *in pari delicto* with the person obtaining his consent by the employment of such means, and will not be precluded from invoking affirmative relief in equity to set aside contracts or instruments so executed, or to defeat an attempted enforcement of them against him. This qualification to the general rule is as universally recognized as the general rule itself.

In *Woodham* v. *Allen*, 130 Cal. 194, [62 Pac. 398], plaintiff sued defendant to recover an amount paid him on secured notes and the value of merchandise, the complaint alleging that the money and merchandise had been extorted from her by defendant through fear of threats of a criminal prosecution against her husband. The trial court sustained a demurrer to the complaint. In reversing the judgment it was said: "It is true, as a general rule, that 'where an illegal contract has been fully executed on both sides the law will aid neither party to recover anything parted with thereunder,' but this rule is subject to the qualification, among others, that the parties to the illegal contract are *in pari delicto;* and it will be seen, upon examination of the cases cited to support this rule, that they all proceed upon the theory that the parties to the contracts were equally in fault and each had freely joined in the transaction without being induced thereto by the oppression or fraud of the other. We think, therefore, that neither the general rule referred to nor · the authorities cited in support thereof govern the case made by the complaint herein."

In 6 American and English Encyclopedia of Law, page 416, after laying down the general rule, it is said: "But when the parties do not stand *in pari delicto,* and it appears that the contract or deed was obtained by duress, equity will not refuse its aid. Thus, when the inequality in the situation of the parties is such that it is apparent the act was not voluntary, as where one of the parties exacts a security which the other is driven to give in order to save one dear to him from exposure, disgrace and ruin, equity will set aside the contract or deed so obtained."

In 6 Cyc., page 316, it is said: "Although both parties are chargeable with knowledge that their agreement is contrary to some rule of law, yet, if one of them acts under duress, or what the law regards as undue influence on the part of the other,

they do not stand on an equal footing and the weaker one may be granted affirmative relief."

In *Bryant* v. *Peck etc. Co.,* 154 Mass. 461, [28 N. E. 678], the plaintiff sued the defendant company to cancel a note and compel a retransfer of stock. A demurrer to the complaint was sustained and plaintiff appealed. In reversing the judgment and directing the overruling of the demurrer, the opinion proceeds: "According to the allegations of the bill the plaintiff became a party to the note from which he prays to be relieved and transferred his stock in consideration that the defendant would not prosecute his son for perjury, and under a threat from it that otherwise his son would be prosecuted. The transaction was illegal (Pub. St. C. 205, sec. 27; *Gorham* v. *Keyes,* 137 Mass. 583) and if the parties stood on an equal footing neither of them would have a remedy against the other. (*Atwood* v. *Fisk,* 101 Mass. 363, [100 Am. Dec. 124].) But it is well recognized that although both parties are chargeable with knowledge that their agreement is contrary to some rule of law, yet, if one of them acts under duress, or what the law regards as undue influence on the part of the others, they do not stand on an equal footing, and the weaker one may be granted affirmative relief. (*Worcester* v. *Eaton,* 11 Mass. 368, 376; *Belding* v. *Smythe,* 138 Mass. 530, 533.) It is settled that such threats as are alleged to have been addressed to the plaintiff constitute duress. (*Harris* v. *Carmody,* 131 Mass. 51, [41 Am. Rep. 188]; see *Rau* v. *Von Zedlitz,* 132 Mass. 164.) And accordingly it has been decided in other jurisdictions, in cases like the present, that the plaintiff was entitled to relief in equity. (*Foley* v. *Greene,* 14 R. I. 618, [51 Am. Rep. 419]; *Schoener* v. *Lissauer,* 107 N. Y. 111, [13 N. E. 741]; *Williams* v. *Bayley,* L. R. 1 H. L. 200; *Davies* v. *Insurance Co.,* 8 Ch. Div. 469, 477; see *Sharon* v. *Gager,* 46 Conn. 189; *Rau* v. *Von Zedlitz,* 132 Mass. 164, 167-169.)"

In *Bell* v. *Campbell,* 123 Mo. 1, [45 Am. St. Rep. 505, 25 S. W. 359], the son-in-law of plaintiff, Mrs. Bell, was threatened with prosecution for defalcation of public funds. Upon importunities by the sureties on his bond and to save him from prosecution, plaintiff executed notes and a deed of trust of a farm to the sureties. On failure of plaintiff to pay the notes the farm was advertised and sold under the deed of trust. Pending the proceedings for the sale of the farm and before

sale thereof, plaintiff brought an action to cancel the notes and deed of trust. The trial court dismissed her petition and entered judgment against her. On appeal the supreme court reversed the decree and remanded the case with directions to the trial court to enter a decree in favor of the plaintiff, canceling the notes and deed of trust. In its opinion the court said: "The circumstances of this case clearly bring it within the operation of the principle that condemns and avoids a contract entered into where the obligor is not a free agent; where he stands *in vinculis;* where he is not equal to the task of protecting himself; where the circumstances which surround him at the time are of such extreme necessity or of distress that his will is overcome, his free agency destroyed by some oppression or fraudulent advantage or imposition incident to the transaction; in such case a court of equity will protect him by setting aside the contract thus made. . . . It is urged that if the deed of trust and notes executed by plaintiff had been given through fear of Carter's criminal prosecution and in order to prevent the same, that then she stands *in pari delicto* with the other parties to the transaction, and therefore could have no relief against the enforcement of these writings obligatory. There are two answers to this contention: 1. Granting that plaintiff did enter into the contract with that purpose in view, she will not be debarred from pursuing her remedy because she cannot in any event be regarded as equally culpable with the adversary parties. When this is the case a court of equity will interfere and go to the relief of the less guilty party, whose transgression has been brought about by the imposition, undue influence, etc., of the party on whom the burden of the original blameworthiness principally rests. (2 Pomeroy's Equity Jurisprudence, 2d ed., sec. 942; 1 Story's Eq. Jur., 13th ed., sec. 300; *Pinckston* v. *Brown,* 3 Jones Eq. [56 N. C.] 494; *Kitchen* v. *Greenebaum,* 61 Mo. 115.)"

Authorities might be multiplied, but we cite only the following as similar in their facts to the allegations in the complaint of plaintiff, and which hold that a party from whom the execution of an illegal contract has been obtained through oppression or undue influence, exercised on him in its procurement, does not stand *in pari delicto* with the other party to the illegal transaction, and may be granted affirmative relief, or may defeat any attempt to enforce the contract, as the

case may be: *Foley* v. *Green,* 14 R. I. 618, [51 Am. Rep. 419];
*Meech* v. *Lee,* 82 Mich. 274, [46 N. W. 383]; *Gray* v. *Freeman,*
37 Tex. Civ. App. 556, [84 S. W. 1105]. Numerous other
cases supporting the exception to the general rule will be
found cited in 6 American and English Encyclopedia of Law,
and 6 Cyc., in support of the text from those works which we
have quoted above.

In the complaint at bar, although it is alleged that the con-
sideration for the execution of these instruments in question
was an illegal one—the compounding of a felony—still it is
further alleged that such execution for that purpose was pro-
cured through the duress, menace, and undue influence of the
defendants Lercari, Pera & Company. The allegations set
forth a good cause of action to have the instrument set aside
for illegality of consideration under the qualification to the
general rule above referred to, and entitled plaintiff to relief
if established by evidence. Issue was joined on this cause of
action, and it was the duty of the court to have made a finding
upon it, and a failure to do so necessitates a reversal of both
the judgment and order denying a new trial, unless, as claimed
by respondents, the findings which the court did make on their
plea of estoppel and laches rendered it unnecessary to find on
the issue of illegality of consideration.

But the doctrine of estoppel by conduct or by laches or
even ratification has no application to a contract or instrument
which is void because it violates an express mandate of the law
or the dictates of public policy. Such a contract has no ex-
istence whatever. It has no legal entity for any purpose and
neither action nor inaction of a party to it can validate it, and
no conduct of a party to it can be invoked as an estoppel
against asserting its invalidity. The authorities are uniformly
agreed on this principle, and the following cases, out of a
number, are selected on this point, because they involve con-
tracts which, like the instruments alleged by plaintiff to have
been executed for an illegal consideration, were declared void
as against public policy, and where it was held that the plea
of estoppel as against such contracts could not be asserted.
(*Brown* v. *First Nat. Bank,* 137 Ind. 655, [37 N. E. 158, 24
L. R. A. 206]; *Langan* v. *Sankey,* 55 Iowa, 52, [7 N. W. 393];
*Wheeler* v. *Wheeler,* 5 Lans. (N. Y.) 355; *Robinson* v. *Patter-
son,* 71 Mich. 141, [39 N. W. 21]; *Hardy* v. *Smith,* 136 Mass.

328; *Stanard* v. *Sampson,* 23 Okla. 13, [99 Pac. 796]; *McCormick Harvester Mfg. Co.* v. *Miller,* 54 Neb. 644, [74 N. W. 1061]; *Henry* v. *State Bank of Laurens etc.,* 131 Iowa 97, [107 N. W. 1034].)

To quote from a few of these cases:—

In *Brown* v. *First National Bank,* 137 Ind. 655, [37 N. E. 158, 24 L. R. A. 206], it is said: "The contention of counsel that the appellee, having received the benefit of the contract, is estopped to defend against it on the principle that a corporation which has such benefit is estopped to assert that it had no power to contract, is unsound, as applied to the case at bar. The rule suggested applies to cases where private rights alone are concerned, while in contracts void as against public policy, the public is interested. The public concern cannot be made a matter of private bargain. A number of maxims apply to interdict the enforcement of such a contract, and many decisions hold that the receipt of benefits and retention of property under such a contract give no right of recovery. .... It cannot be rendered valid by invoking the doctrine of estoppel."

In *Langan* v. *Sankey,* 55 Iowa, 52, [7 N. W. 393]: "But it is insisted such a contract may be relied on as an estoppel, and a recovery, therefore, had. We do not believe that this is correct, and are unwilling to hold that a contract void as being against public policy has any vitality whatever. It matters not how it may be pleaded, a substantial right cannot be enforced thereunder. That which cannot be recovered in an action on the contract cannot be done by indirection."

In *Wheeler* v. *Wheeler,* 5 Lans. (N. Y.) 355: "The defendant's counsel contends that, even if the agreement was void as against public policy, still it was competent for the parties to ratify it after the sale and purchase; and that the plaintiff, having received from the defendant his share of the purchase price, or a portion thereof, is estopped from alleging the illegality of the agreement until he refunds or offers to refund the money received. But the principle of estoppel does not apply to an agreement which the law holds to be void as against public policy. The ratification of such a contract is as nugatory as the contract itself."

In *Stanard* v. *Sampson,* 23 Okla. 13, [99 Pac. 796]: "It is settled by the overwhelming weight of authority that where

a contract is illegal, on account of involving the commission of a crime, such contract cannot thereafter be ratified."

It is clear, therefore, under the authorities that the necessity for a finding upon the issue of illegality of consideration was not rendered unnecessary or immaterial by the finding of estoppel and laches which the court did make, as the principle of estoppel has no application to agreements which are void as contravening public policy. The dominant issue under the pleadings in this case was whether the instruments were executed for an illegal consideration. If it was found that they were plaintiff would have been entitled absolutely to a decree awarding her the full relief prayed for. Other independent issues as to duress, menace, or undue influence and the affirmative plea of estoppel and laches interposed by defendants could only become important if this issue was found against her. As there was no finding at all on it no judgment in the case could be properly rendered.

In addition to the points we have been considering appellant attacks the sufficiency of the evidence to sustain the findings made and their sufficiency as findings to support the judgment.

But as the judgment and order denying a new trial must both be reversed we do not deem it necessary to discuss these points, as such questions will only become of real moment when the trial court has made findings upon all the material issues in the case.

The judgment and order appealed from are reversed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.