## MALLARD v. DAY et al. (No. 1937.)

(Court of Civil Appeals of Texas. Texarkana.
May 9, 1918. Rehearing Denied May 16,
1918.)

1. CONTRACTS ⟠═95(1)—DURESS—EFFECT.

A contract made under duress is voidable at the instance of the party on whom the duress is practiced.

2. CONTRACTS ⟠═139—ILLEGALITY—STIFLING
PROSECUTION—FRAUD AND DURESS.

Defendant, who charged plaintiff with stealing his flour, and, under duress of threats of murder and prosecution, forced him to assign vendor's lien notes, and thereafter secured a conveyance of the land from the buyer from plaintiff by canceling such notes, could not keep the fruits of his duress as against plaintiff on the ground that both parties were in pari delicto in contracting to stifle a prosecution.

3. TRUSTS ⟠═95—CONSTRUCTIVE TRUSTS—OB-
TAINING LAND BY FRAUD AND DURESS.

Having acquired the notes by duress, defendant held them as trustee for plaintiff, but charged with the money paid by him to a third person, whom plaintiff owed, and with whom the notes were pledged, and having, while holding the notes, used them and money of his own to acquire the land, defendant held an undivided interest in it as constructive trustee for plaintiff.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Suit by R. B. Mallard against Mattie Day and others. From a judgment adverse to him as against defendants Day, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

This was a suit by appellant against the appellees Mattie Day, Willie Day, Maddox Day, Jean Day, Tommie Day, Will W. Day,

Cecil Cook, and Bob Miller, and his wife, Gabriella Miller. The petition contained two counts; one with allegations usual in the statutory action of trespass to try title, and the other with allegations substantially as follows: (1) That appellant on April 15, 1914, by his deed of that date conveyed a parcel of land in Athens to Cecil Cook, then a minor. (2) The consideration for the conveyance was three promissory notes for $166.66²/₃ each, payable one, two, and three years after their date, to wit, said April 15, 1914, to appellant's order, made by said Cecil Cook and his mother Gabriella Miller. (3) The vendor's lien to secure the payment of said notes was expressly retained therein and in appellant's said deed to Cook. (4) About the middle of July, 1914, appellant deposited said three notes with one Tom Conditt to secure indebtedness amounting to $137.50 which he owed said Conditt. (5) On January 16, 1915, one W. W. Day, since deceased, who was the husband of Mattie Day and the father of the other Days mentioned above, accused appellant of stealing certain flour from him, and threatened to kill appellant if he did not pay him (said Day) for said flour. (6) The threat was repeated by said Day through one Coffee on January 23, 1915. Day was a violent and dangerous man, likely, as appellant knew, to carry out his threat. (7) Under duress of fear he had that Day would kill him, as he threatened to if he did not pay for the flour which Day had falsely accused him of stealing, appellant was, on said January 23, 1915, induced to assign the three notes to Day, and to give to Day an order on Coffee, directing him to deliver the notes to Day on the payment by him of the $137.50 due Conditt. (8) Day paid Conditt the $137.50, and secured possession of the notes. (9) Afterwards Day agreed with Cook to cancel and deliver the three notes to him if he, Cook, would convey the land to him, Day. (10) In accordance with the agreement Cook, by a deed dated March 20, 1915, conveyed the land to Day. (11) The Days from the time Cook conveyed the land to W. W. Day rented it to Cook at a rental of about $10 per month. (12) Appellant by reason of the facts stated was still the owner of the notes and the superior title to the land. (13) It was provided in the notes that a failure to pay either of them should mature all of them at the election of the holder, and that appellant, as such holder, elected to declare all of them due. (14) If the law required he should repay the amount paid out by Day, less the rents paid by Cook, appellant was ready to do so.

The prayer was that appellant—

"have judgment for foreclosure of lien on said property, and that his debt be established according to law; that said property be sold to satisfy said indebtedness herein named. Plaintiff asks such relief be given him as he is entitled to in law and in equity, and if the court concludes that the plaintiff is entitled to recov-

er the title and possession of said land, then the plaintiff asks for this relief, and that all title be divested out of the defendants and invested in the plaintiff, and that all deeds affecting the rights and title adversely be canceled."

The answer of the Days consisted of: First, a general denial; second, a plea that the notes were assigned by appellant to said W. W. Day, deceased, (1) to pay for groceries worth several hundred dollars, which, it was alleged, appellant had stolen from said Day, and (2) to induce said Day to agree, as he did, not to prosecute a case then pending in the courts in which appellant was charged with theft of the groceries, which agreement, it was alleged, was "contrary to law and public policy;" third, a plea that the agreement between appellant and Day "was completely executed and consummated" by the delivery of the notes to Day, and, therefore, that appellant was "estopped and barred from prosecuting and recovering in this cause"; and, fourth, a plea setting up the fact that Day, to obtain possession of the notes, paid Conditt the $137.50 appellant owed him, and alleging that Day not only canceled and delivered the notes to Cook in consideration of the conveyance to him of the land by the latter, but in addition paid Cook the sum of $105.

The suit was dismissed as to the Millers, on their disclaimer, it is recited in the judgment, of any claim of interest in the land. Cook answered, setting up his minority at the times he made the notes to appellant and the deed to Day, and prayed for a cancellation thereof, and in addition thereto for judgment against appellant for $350, which he paid to appellant for the land as part of the consideration for the conveyance thereof to him. He was denied the affirmative relief he sought, and has not prosecuted an appeal. Therefore further reference to him need not be made.

It appeared from the testimony: (1) That appellant, by a deed dated April 15, 1914, conveyed the land to Cook in consideration of $350 paid by Cook and three promissory notes for $166.66²/₃ each, made by Cook and his mother Gabriella Miller, payable one, two, and three years after their date (said April 15, 1914) to appellant's order, and secured by the vendor's lien retained on the land; (2) that appellant deposited the notes with one Conditt to secure the payment of $137.50 he owed Conditt; (3) that about January 15, 1915, Day caused proceedings charging appellant with theft from him (Day) of about 200 sacks of flour to be commenced in the courts, and threatened to kill appellant if he did not return the flour or pay him for it; (4) that afterwards, to wit, on January 23, 1915, while Conditt held the notes, appellant gave Day an order, directing Conditt to deliver the notes to Day when the latter paid him (Conditt) the $137.50; (5) that Day paid Conditt the $137.50, and so

obtained the notes; (6) that in accordance with an agreement thereafterwards made between them Cook, by a deed dated March 20, 1915, conveyed the land to Day in consideration of the cancellation of the notes and the payment to him by Day of $110; (7) that Day died June 19, 1915, but whether testate or intestate did not appear; (8) that Cook rented the land from the Days from April 1, 1915, to August 1, 1916, paying them as rent therefor $8.75 per month; and (9) that this suit was commenced August 30, 1916.

On special issues submitted to them the jury found that the land was worth $650 at the date of the trial, and further found, among things not material to the controversy between appellant and the Days, as follows:

(1) That the "consideration" to appellant for the assignment by him of the notes to Day was:

"That the said Day was to pay the amount due by Mallard to Conditt, and that Day was not to hurt or molest Mallard, and also that Day would not prosecute the plaintiff Mallard on the charge of having stolen the flour."

(2) That a part of the "consideration" to appellant for the assignment of the notes to Day was—

"to keep Day from killing him and from prosecuting him on a charge of having stolen the flour."

(3) That in turning over the notes to Day appellant acted under the fear of threatened violence.

The judgment was that appellant take nothing by his suit against the Days.

R. S. Neblett and Ormond Simkins, both of Corsicana, and Miller & Miller, of Athens, for appellant. Richardson & Watkins and J. J. Faulk, all of Athens, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] The law being that a contract made under duress is voidable at the instance of the party on whom the duress is practiced (1 Elliott on Contracts, § 142; 1 Black on Rescission, § 225; 9 R. C. L. p. 725; 9 Cyc. 443), and the jury having found that appellant would not have assigned the notes to W. W. Day but for duress practiced on him by said Day, appellant insists it was error for the trial court to refuse him relief.

Appellees combat this, asserting that a sufficient reason for denying appellant relief lies in the further finding of the jury that the duress practiced on him consisted, in part at least, of threats of Day to prosecute him on a charge of felonious theft. They assert that appellant's agreement to assign the notes to Day to induce him to forbear executing the threats was against public policy, and that, having assigned the notes in compliance with that agreement, appellant properly was denied relief. The proposition presenting the contention in appellees' brief is as follows:

"Where a contract has been entered into the consideration of which is the suppression of prosecution for crime, the courts will refuse to aid either party to same, either in the carrying out or the rescission of same, but will leave them where they are, such a contract being contrary to public policy and void; and this is true where any part of the consideration is so obtained and criminal."

[2] That the rule appellees undertake to state and seek to invoke does not apply to the case is clear in the light of the authorities. 1 Elliott on Contracts, § 162; 2 Elliott on Contracts, § 1101; 6 R. C. L. pp. 833, 834; 6 Cyc. 317; Gorringe v. Reed, 23 Utah, 120, 63 Pac. 902, 90 Am. St. Rep. 692; Colbey v. Trust Co., 160 Cal. 632, 117 Pac. 913, 35 L. R. A. (N. S.) 813, Ann. Cas. 1913A, 515. The facts in the Gorringe Case were not materially unlike the facts of this one. In that case the court said:

"The very existence of a contract requires that the minds of the parties meet, and that it be executed freely and voluntarily by all the contracting parties. If, then, in a case like the one shown by the evidence herein, one of the parties acts under constraint, induced by the other, and signs the instrument without voluntary assent to it, the party who exerted the improper influence can take no advantage of the contract. * * * One who, under circumstances as now disclosed in this case, makes use of the criminal process of the courts for the purpose of overcoming the will of another to secure an advantage to himself is not in a position to obtain and hold the fruits of a contract, whether executed or executory, so obtained, on the ground that both parties were in pari delicto, and that in equity the court will leave them where it finds them."

[3] Having acquired the notes by duress practiced, W. W. Day held them as trustee for appellant, but charged with the $137.50 paid by him to Conditt; and having, while so holding the note, used them and money of his own to acquire the land, said Day held an undivided interest in the land as trustee for appellant. 39 Cyc. 172; Schneider v. Sellers, 98 Tex. 390, 84 S. W. 417; Fidelity & Deposit Co. v. Wiseman, 103 Tex. 286, 124 S. W. 621, 126 S. W. 1109; Gillean v. Witherspoon, 121 S. W. 909; Morris v. Vyse, 154 Mich. 253, 117 N. W. 639, 129 Am. St. Rep. 472; Borchert v. Borchert, 132 Wis. 593, 113 N. W. 35. In the Sellers Case Justice Brown quotes the following from 2 Pomeroy's Equity, § 1053, as a correct statement of the rule:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holders of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired, in favor of the one who is truly and equitably entitled to the same."

And in the Wiseman Case Chief Justice Gaines said:

"When one has been defrauded of property, as in this case, he may sue for the property itself, or, in case it has been sold to an innocent purchaser, he may recover the proceeds.

Whether of the property. or of its proceeds, the holder is considered a constructive trustee."

It appeared that Day gave the notes he held as trustee for appellant and $110 in money he owed in his own right to Cook for the land. The principal and accrued interest of the notes at that time amounted to $540.50. This sum, less $137.50 paid by Day to Conditt, who held the notes as security for a debt appellant owed him, represented the undivided interest in the land held by Day as trustee for appellant; and the $137.50 paid by Day to Conditt and $110 paid by him to Cook represented the undivided interest owned by Day in his own right. So, it seems, Day paid $403 of the total of $650.50 he gave Cook for the land with property he held as trustee for appellant, and $247.50 thereof with property he owned in his own right. Hence it appeared that appellant owned an undivided interest of 806/1301 in the land. Therefore the court below erred when he rendered judgment denying appellant relief. The judgment of that court will be reversed, and judgment will be here rendered that appellant do have and recover of appellees an undivided interest of 806/1301 in the land described in appellant's petition.